IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHECKER CAB PHILADELPHIA, INC.,** *et al.* | **CIVIL ACTION** |
| *Plaintiffs* | **NO. 14-7265** |
| v. | |
| **UBER TECHNOLOGIES, INC.,** *et al.* *Defendants* | |

NITZA I. QUIÑONES ALEJANDRO, J.                                         MARCH 3, 2015

## MEMORANDUM OPINION

### INTRODUCTION

Before this Court is a *motion for the issuance of a preliminary injunction* filed by Plaintiffs,[1] pursuant to Federal Rule of Civil Procedure (Rule) 65. [ECF 12]. In its motion, Plaintiffs seek to enjoin Defendants[2] from operating what Plaintiffs describe is an illegal taxi cab or gypsy cab operation in Philadelphia. Defendants have opposed the motion. [ECF 19 and 20]. The issues have been fully briefed and, for the reasons set forth herein, the motion is denied.

### BACKGROUND

The relevant facts in this case are drawn from Plaintiffs' complaint and are construed in Plaintiffs' favor for purposes of resolving the underlying motion for a preliminary injunction. These facts can be summarized as follows:

---

[1] Plaintiffs consist of 45 taxicab companies and a taxicab dispatch company who provide taxi services in Philadelphia.

[2] Defendants consist of Uber Technologies, Inc. ("Uber"), one of Uber's co-founders and Chief Operating Officer, Uber's General Manager in Philadelphia, two of Uber's wholly-owned subsidiaries, various individual and corporate investors, and a number of drivers used by Defendants to provide various transportation services in Philadelphia (collectively, "Uber" or "Defendants").

Plaintiffs, taxicab companies and their dispatch company, facilitate and provide call or demand taxicab service in Philadelphia. (Comp. ¶¶1, 4). According to Plaintiffs, they are regulated by the Philadelphia Parking Authority (the "Authority") and must comply with the regulations of the Authority. (*Id.* at ¶¶1, 3-8). The Authority provides each Plaintiff with a certificate of public convenience and a corresponding "medallion," or license to operate a taxi cab service in Philadelphia. (*Id.* at ¶¶5-6). Medallions are limited in number and are issued by the Authority. (*Id.*). To obtain fares Plaintiffs use a technology platform that enables members of the riding public to order a ride at the touch of a button using a smartphone application (the "Checker App"). (*Id.* at ¶¶2, 87-88). The Authority has approved the Checker App for use in Plaintiffs' taxicabs. (*Id.* at ¶3).

Defendant Uber Technologies, Inc. ("Uber"), is a Delaware corporation with its principal place of business in California. Uber has also developed a technology platform that uses a smartphone application (the "Uber App"), which enables members of the riding public to order a ride with the touch of a button. (*Id.* at ¶¶11-12, 49-50). According to Plaintiffs, the Authority has not approved the Uber App for use in Philadelphia. (*Id.* at ¶13).

Uber uses the Uber App to provide transportation services to the public through its wholly-owned subsidiaries, Defendants Rasier and Gegen. (*Id.* at ¶¶17, 19, 49-50). Neither Uber, Rasier, nor Gegen own or operate any vehicles or have any medallions issued by the Authority. (*Id.* at ¶¶14, 19, 22, 24, 60, 69-70). Defendants Rasier and Gegen engage independent drivers (the "Defendant Drivers") to provide the transportation services offered through the Uber App. The Defendant Drivers supply their own vehicles and also do not have medallions issued by the Authority. (*Id.* at ¶¶44, 62, 65, 72, 78).

Procedurally, on December 23, 2014, Plaintiffs filed a complaint against Defendants asserting the following claims: Count 1 – unfair competition under Pennsylvania common law; Count 2 – false advertising under the Lanham Act; and Counts 3-5 – claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") statute. Each of these claims is premised upon the Defendants' purported unauthorized and unlawful transportation services in Philadelphia in violation of various state and local laws and regulations.

2

**LEGAL STANDARD**

Rule 65 governs the issuance of a preliminary injunction. A "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). For a court to grant a preliminary injunction, a movant must show that "(1) it has a likelihood of success on the merits, (2) it will suffer irreparable harm if the injunction is denied, (3) granting preliminary relief will not result in even greater harm to the nonmoving party, and (4) the public interest favors such relief." *Rogers v. Corbett*, 468 F.3d 188, 192 (3d Cir. 2006). A movant carries the burden to establish each element in its favor. *P.C. Yonkers, Inc. v. Celebrations the Party Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005). A plaintiff's "failure to establish any element . . . renders a preliminary injunction inappropriate." *NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999).

A motion for a preliminary injunction may be denied without a hearing if "the movant is proceeding on a legal theory which cannot be sustained" or "the movant has not presented a colorable factual basis to support the claim on the merits or the contention of irreparable harm." *Hynoski v. Columbia County Redevelopment Authority*, 485 F. App'x 559, 564 (3d Cir. 2012) (quoting *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1175-76 (3d Cir. 1990)). Here, this Court concludes that such circumstances are present in this case and, thus, finds that a hearing is not necessary to address this motion.

**DISCUSSION**

In their motion, Plaintiffs seek a preliminary injunction based solely on their unfair competition claim under Pennsylvania common law. Specifically, Plaintiffs contend that Defendants have engaged in unfair competition by operating a taxi cab service in violation of

various state and local taxi cab ordinances. In opposing Plaintiffs' motion, Defendants argue, *inter alia*, that preliminary injunctive relief is inappropriate because: (1) Plaintiffs cannot show a likelihood of success on their unfair competition claim; and (2) Plaintiffs have not and cannot show irreparable harm. This Court agrees.

### *Likelihood of Success on the Merits*

Defendants argue that Plaintiffs cannot demonstrate a likelihood of success on the merits of their unfair competition claim because Defendants' alleged violation of local and state regulations cannot support an unfair competition claim, as a matter of law, where enforcement of those laws or regulations has been left to state and local regulatory authorities. Further, the alleged violations do not provide a private cause of action for Plaintiffs to assert. As support for their argument, Defendants point to a number of federal decisions in which courts have either denied a plaintiff's request for injunctive relief for violation of federal, state and local laws and regulations, or have dismissed such claims outright. This Court finds these well-reasoned decisions persuasive.

For example, in *Sandoz Pharmaceuticals Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222 (3d Cir. 1990), the Third Circuit Court of Appeals affirmed the district court's denial of a plaintiff's motion for a preliminary injunction where the plaintiff sought to hold its competitor liable under the Lanham Act for various violations of federal laws and regulations.[3] The *Sandoz*

---

[3] As noted by Defendants, and an abundant line of cases from this circuit, an unfair competition claim under Pennsylvania common law is the equivalent of a federal Lanham Act claim. *See e.g.*, *Flynn v. Health Advocate, Inc.*, 169 F. App'x 99, 101 (3d Cir. 2006) ("Thus, the analysis for the federal and common law trademark infringement and the unfair competition claims is virtually the same."); *Ecore International, Inc. v. Downey*, 2015 WL 127316, at *6 (E.D. Pa. Jan. 7, 2015); *R.J. Ants, Inc. v. Marinelli Enterprises, LLC*, 771 F.Supp.2d 475, 489 (E.D. Pa. 2011) ("A Pennsylvania common law cause for unfair competition is identical to the Lanham Act, without the federal requirement of interstate commerce."); *Regal Indus., Inc., v. Genal Strap, Inc.*, 1994 WL 388686, at *2 (E.D. Pa. July 26, 1994) ("The elements of common law unfair competition in Pennsylvania are identical to those necessary to make out a claim under the Lanham Act, except that the Lanham Act requires interstate commerce.").

4

plaintiff had based its claim on its allegation that the defendant had mislabeled its product in violation of the Food, Drug & Cosmetic Act ("FD&C Act"), and that such mislabeling constituted false advertising. In its decision, the Third Circuit noted that jurisdiction for enforcement of the regulations was vested "jointly and exhaustively in the [Food and Drug Administration] and the [Federal Trade Commission]," and that the statutes which were arguably violated by the defendant provided no private cause of action. *Id.* at 231. The Court held that "what the FD&C Act and the FTC Act did not create directly, the Lanham Act does not create indirectly, at least not in cases requiring original interpretation of these Acts or their accompanying regulations," and affirmed the district court's denial of a preliminary injunction. *Id.*

The Third Circuit's decision in *Sandoz* has been cited and followed in cases closely resembling the case *sub judice*. In *Dial A Car, Inc. v. Transportation, Inc.*, 82 F.3d 484 (D.C. Cir. 1996), the D.C. Circuit Court of Appeals relied on *Sandoz* to hold that private parties may not invoke the Lanham Act to create a private cause of action for enforcement of local taxi regulations. *Id.* at 488-89. Similar to this matter, the plaintiff in *Dial A Car*, a company that was licensed to provide on-call taxi services, alleged that two other taxi companies were illegally providing similar, yet cheaper, taxi services within the District of Columbia without a license to do so. *Id.* at 484. Affirming the district court's dismissal of the Lanham Act claims, the appellate court found that the plaintiff was "simply using the Lanham Act to try to enforce its preferred interpretation of [a local taxi regulation] instead of adjudicating the issue before the [local regulatory agency]. We reject such a gambit because we see no reason to reach out and apply federal law to this quintessentially local dispute, and neither appellant nor our dissenting

---

As such, federal case law treatment of Lanham Act claims provides, at the very least, persuasive authority when dealing with a plaintiff's common law unfair competition claims, as in this case.

colleague cites to any Supreme Court or federal appellate decision that authorizes us to do so." *Id.* The appellate court further pointed out that "although the [Lanham] Act has been interpreted in literally hundreds of appellate cases since its enactment in 1946, we cannot find a single case that purports to extend the Act to allow federal judges to interpret and enforce municipal regulations, thereby affording plaintiffs remedies over and above those provided by local law." *Id.* at 490 (emphasis in original).

More recently, a district court in Illinois dismissed state law unfair competition claims, similar to those asserted in this case, that were brought by a group of taxi drivers/associations against Uber. In *Yellow Group LLC v. Uber Technologies, Inc.*, 2014 WL 3396055 (N.D. Ill. July 10, 2014), and *Manzo v. Uber Technologies, Inc.*, 2014 WL 3495401 (N.D. Ill. July 14, 2014), the district court dismissed state unfair competition claims against Uber brought by a group of taxi driver/association plaintiffs. Similar to the Plaintiffs here, the plaintiffs in *Yellow Group* and *Manzo* asserted unfair competition claims under Illinois common law against Uber based upon its alleged illegal operation of a taxi service in violation of various state and local ordinances. In *Yellow Group*, the court held that "[t]o the extent that the Second Amended Complaint alleges that Uber violated the Lanham Act or its Illinois equivalents by simply operating illegally or by misrepresenting the legality of its service, those allegations fail under the rationale in *Dial A Car, Inc.*, 82 F.3d at 488." *Yellow Group*, 2014 WL 3396055, at *7. Similarly, in *Manzo*, the court dismissed the state unfair competition claims, and agreed with the reasoning in *Dial A Car* that the plaintiffs "cannot use [state unfair competition laws] 'as a backdoor method' to bring a claim that Uber violates Chicago taxi and livery regulations." *Manzo*, 2014 WL 3495401, at *4.

6

Finally, in *Greater Houston Transportation Co. v. Uber Technologies, Inc.*, Civ. A. No. 14-941 (S.D. Tex. Apr. 21, 2014), the district court denied a motion for a temporary restraining order brought by taxi drivers/association plaintiffs whose claims, like those of Plaintiffs here, were premised on Uber's alleged operation of its service in violation of local ordinances. In its oral decision, the court stated as follows:

> The Court believes that the issues that have been raised and presented by the plaintiffs are issues for the cities of San Antonio and Houston to enforce, at least at the injunction stage, and the Court is particularly concerned with doing anything to stand in the way of the political process that appears to already be underway in which the city of Houston is examining its own ordinances and trying to determine how to deal with this emerging technology and catch their ordinances up with the technology, which clearly appears to have gotten ahead of the current city of Houston ordinances.

Here, like the claims dismissed in the cases discussed above, Plaintiffs premise their unfair competition claims on Defendants' alleged violation of various state and local laws and regulations pertaining to the operation of taxi cab services in Philadelphia. Indeed, Plaintiffs acknowledge as much in their brief: "The gravamen of Plaintiffs' Complaint is that the Uber defendants are operating an illegal gypsy cab operation in the City of Philadelphia in violation of law and regulation." [ECF 12 at p. 6].

Therefore, with respect to the injunctive relief Plaintiffs seek for their state unfair competition claim, this Court finds that these issues are best left to the state and local legislative bodies and regulatory authorities charged with implementing and enforcing the ordinances and regulations that Plaintiffs here seek to enforce by way of private litigation. Though this Court does not intend this ruling to also dispose of the merits of Plaintiffs' claims in their entirety at this stage, Plaintiffs, however, have fallen far short of demonstrating a likelihood of success on

the merits of their unfair competition claim as needed to obtain a preliminary injunction under Rule 65.

### *Irreparable Harm*

Defendants also oppose Plaintiffs' motion on the basis that Plaintiffs have not and cannot establish irreparable harm. As stated, Plaintiffs bear the burden of showing a likelihood of immediate irreparable harm. *Ferring Pharmaceuticals, Inc. v. Watson Pharmaceuticals, Inc.*, 765 F.3d 205, 217 (3d Cir. 2014). Further, "[e]stablishing a risk of irreparable harm is not enough. A Plaintiff has the burden of proving a 'clear showing of immediate irreparable injury.'" *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987). The Third Circuit, however, has "never upheld an injunction where the claimed injury constituted a loss of money, a loss capable of recoupment in a proper action at law." *In re Arthur Treacher's Franchisee Litigation*, 689 F.2d 1137, 1145 (3d Cir. 1982).

Here, Plaintiffs argue that irreparable harm should be presumed, as a matter of law, where a movant shows that a defendant violated a law. As support for this proposition, Plaintiffs point to a number of state court decisions in which various state agencies/entities brought civil actions and sought injunctive relief against private individuals for violations of specific state statutes. These cases are inapposite here. None of Plaintiffs' cited cases involved a private litigant seeking a preliminary injunction against another private party for unfair competition under Pennsylvania common law. Further, none of the cases cited by Plaintiffs involved a party seeking a preliminary injunction in federal court pursuant to Federal Rule of Civil Procedure 65.

Recently, the Third Circuit, relying on *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 3888 (2006), and *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008), held in *Ferring*, 765 F.3d at 206, that a private litigant seeking a preliminary injunction against another

private litigant for a Lanham Act claim is not entitled to a presumption of irreparable harm, but must show that irreparable harm is likely. In light of this Third Circuit precedent, this Court finds that Plaintiffs are not entitled to a presumption of irreparable harm but, rather, must make a clear showing of immediate irreparable harm.

As to their irreparable harm, Plaintiffs point solely to their loss of business or loss of taxi cab fares resulting from Defendants' purported operation of its unauthorized taxi cab and limousine service. Such economic damages, if proven, are compensable by a monetary award and, thus, do not constitute irreparable harm. *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir. 1994) ("Economic loss does not constitute irreparable harm."). Plaintiffs' contention that their damages are irreparable because of their indeterminable nature is also misplaced. *Id*. at 655 ("An inability to precisely measure financial harm does not make that harm irreparable or immeasurable."). Plaintiffs' alleged injuries flow from Defendants' purported stealing of taxi cab fares from Plaintiffs. Such injury, to the extent it has occurred, is clearly reparable by way of monetary damages. As such, preliminary injunctive relief is inappropriate.

## CONCLUSION

For the reasons stated herein, Plaintiffs have failed to make the requisite showing required under Rule 65 and case law for this Court to issue a preliminary injunction. Therefore, Plaintiffs' motion for a preliminary injunction is denied. An Order consistent with this Memorandum Opinion follows.

NITZA I. QUIÑONES ALEJANDRO, USDC J.