## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHECKER CAB OF PHILADELPHIA, et al., | : | |
| | : | |
| | : | |
| PLAINTIFFS | : | Case No.: 2:14-cv-07265 |
| | : | |
| V. | : | |
| | : | |
| UBER TECHNOLOGIES, INC., et al. | : | |
| | : | |
| DEFENDANTS | : | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT GOOGLE VENTURES, LLC'S MOTION TO DISMISS

Plaintiffs Checker Cab of Philadelphia, et al., by and through their counsel Salaman, Grayson & Henry, P.C. hereby respond in opposition to the Motion to Dismiss the Complaint of Google Ventures, LLC and respectfully requests that the Motion be denied. Pursuant to Local Rule 7.1., Plaintiffs respond with a Brief in Opposition to the Motion to Dismiss and Proposed Order and also incorporate Plaintiff's Brief in Opposition to the Motion to Dismiss of Gegen, LLC et al. Plaintiffs respectfully request oral argument on this Motion.

## I.      INTRODUCTION

On or about August 13, 2013, and again, on or about June 6, 2014, Defendant Google acquired an interest in Uber, an illegal and unauthorized company which violates the laws of Pennsylvania by subverting the legal requirement for taxicab companies, drivers, and vehicles, in order to maintain their "gypsy cab service". In Defendant Google Ventures, LLC's present Motion to Dismiss on the grounds that Plaintiffs have not set forth a valid RICO claim against them, Defendant Google Ventures, LLC, pleads with this Honorable Court that it is just a mere

passive shareholder, with no knowledge of any wrongdoing that Uber has engaged in, without ever mentioning to this Court that the President and C.E.O. of Google Ventures, LLC is on the Board of Directors for Uber. This attempt to pull wool over the eyes of this Honorable Court by intentionally omitting and misrepresenting facts regarding their involvement in racketeering should be admonished by the Court and is yet another example of the Defendants' attempt to profit and benefit for their wrongdoing at the expense of injury to the Plaintiffs. The foregoing brief outlines the RICO claims brought against Google Ventures, LLC, and the reasons thereby the Court should properly deny Defendant Google Ventures, LLC's Motion to Dismiss.

## II.    LEGAL STANDARD ON A 12(b)(6) MOTION TO DISMISS

In reviewing orders dismissing an action pursuant to Rule 12(b), [t]he standard by which the orders must be tested is whether taking the allegations of the complaint as true, ... and viewing them liberally giving plaintiffs the benefit of all inferences which fairly may be drawn therefrom, ... 'it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief.' Wisniewski v. Johns–Manville Corp., 759 F.2d 271, 273 (3d Cir.1985)  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The plaintiff need not satisfy any "probability" requirement, but must set forth "more than a sheer possibility" that the defendant's actions give rise to the claim. Id.  The complaint must contain "'enough factual matter (taken as true) to suggest' the required elements of a cause of action. This 'does

4

not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough

facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary

element." Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

### III.    ARGUMENT

#### A. THE COURT MUST PROPERLY DENY DEFENDANT GOOGLE VENTURES LLC'S MOTION TO DISMISS BECAUSE DEFEANDANT PROXIMATELY CAUSED PLAINTIFFS' INJURIES TO THEIR BUSINESSES PURSUANT TO 1964(c).

Broadly speaking, a RICO violation results from the use of power, acquired by

crime, to gain or maintain a foothold in an enterprise that operates in interstate commerce. In

order to understand the elements of a civil RICO cause of action, it is necessary to refer to three

different sections of the Act. Subsection 1964(c) provides a RICO claimant with a private right

of action. Subsection 1964(c) reads as follows:

> Any person injured in his business or property by reason of
> violation of section 1962 of this chapter may sue therefor in any
> appropriate United States district court and shall recover threefold
> the damages he sustains and the cost of suit, including a reasonable
> attorney's fee.

18 U.S.C. § 1964(c).  "Although there can be little doubt that criminal infiltration of businesses

and injury to free competition in the marketplace were major concerns of Congress in enacting

RICO, it is also clear that Congress's concerns extended much farther." Haroco, Inc. v American

Nat. Bank and Trust Co. of Chicago, 747 S. 2d 384 (7th Cir. 1984) quoting United States v.

Turkette, 452 U.S. at 590–91, 101 S.Ct. at 2532–33. A business competitor harmed by

infiltration or by other effects of racketeering is able to state a claim under RICO by alleging a

"competitive" injury. Haroco, Inc. v American Nat. Bank and Trust Co. of Chicago, 747 S. 2d

384 (7th Cir. 1984) See, Addis v. Moser, No. 83 C 6118, slip op. at 14 & n. 9 (N.D.Ill. Feb. 15,

1984); Landmark Savings & Loan v. Loeb Rhoades, Hornblower & Co., 527 F.Supp. 206, 208–

09 (E.D.Mich.1981) (competitive injury is cognizable under RICO). While a competitive injury

is sufficient to sustain a RICO claim, a competitive injury is not necessary to state a RICO claim.

Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479 (1985) also blended elements of

competitive injury and indirect injury into its racketeering injury requirement. The Sedima

opinion talks not only about mobsters but also about "systemic harm to competition and the

market," which thereby injures "investors and competitors." 741 F.2d at 496. The Sedima court

said it was not importing every detail of the standing requirements from antitrust law; for

example, it said that an actual anticompetitive effect need not be proved if the injury were of the

type which would ordinarily threaten competition. Id. at 495–96 & n. 41.

Primary consideration in determining whether plaintiff's injuries have been proximately

caused by defendant's RICO violations is the directness of the relationship between the injury

asserted and the injurious conduct alleged.  Bieter Co. v. Blomquist, C.A.8 (Minn.) 1993, 987

F.2d 1319. In the case of Commercial Cleaning Services, L.L.C. v. Colin Service Systems, Inc.,

271 F.3d 347 (2d. Cir. 1991), the plaintiff and the defendant were direct competitors in the

laundry business, and the defendant allegedly obtained an unfair advantage from hiring hundreds

of undocumented aliens at low wages. Id. at 378–79. The court reasoned that, because the

plaintiff and the defendant were direct competitors, damages were readily discoverable and such

damages did not apply to plaintiffs outside the category of direct competitors, involving no

complicated task of ascertaining and apportioning damages.  The Court of Appeals noted: "There

is no class of potential plaintiffs who have been more directly injured by the alleged

RICO conspiracy than the defendant's business competitors...." Id. Therefore, the court found

that the plaintiff's claim satisfied the "proximate cause" requirement. Id. at 378.

6

Here, Plaintiffs meet the requirements of 1964(c) because they have suffered a harm and competitive injury to their business and property from the investments of Google Ventures, LLC which enabled the fraud and misrepresentation made to the public regarding Plaintiffs as direct competitors. These are separate from the predicate acts of wire fraud that occurs anytime a customer is charged with the Uber app. The control and participation of Google Ventures, LLC, enabled by their huge investment was the driving force of the expansion of the Illegal Taxicab Enterprise and Uber into Pennsylvania. Not only have Plaintiffs lost hundreds of thousands of dollars in the market, Defendants have also conspired in publishing false and misleading statements to disparage the reputation of Plaintiffs and confuse consumers.

**B. THE COURT MUST PROPERLY DENY DEFENDANT GOOGLE VENTURES LLC'S MOTION TO DISMISS BECAUSE GOOGLE VENTURES HAS INVESTED IN THE ILLEGAL TAXICAB ENTERPRISE, IS A DIRECT BENEFICIARY OF THE RACKETEERING ACTIVITY, MANAGES AND CONTROLS THE ILLEGAL TAXICAB ENTERPRISE, AND CONSPIRED TO VIOLATE SECTION 1962**

**i. Legal Standard for Liability under §1962(a)**

The second section that is crucial to an understanding of a civil RICO claim is Section 1962. Under Section 1962, four types of relationships are prohibited. Subsection 1962(a) prohibits the investment of income, derived from a pattern of racketeering activity, in "any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. Specifically, subsection 1962(a) reads as follows:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or

operation of any enterprise which is engaged in, or the activities of which affect interstate or foreign commerce.

18 U.S.C. § 1962(a). To be liable under subsection (a), a corporation-enterprise must be the direct or indirect beneficiary of the racketeering activity carried on by the corporate entity's high officials. Sections 1962(a) and (b), do not require such separate identity. Petro–Tech, 824 F.2d at 1361; Haroco v. American National Bank and Trust Co., 747 F.2d 384, 402 (7th Cir.1984).

The Court in Haroco, Inc. v. American National Bank & Trust Co., 747 F.2d 384 (7th Cir.1984), aff'd, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985), found that under § 1962(a) the liable person may be a corporation using the proceeds of a pattern of racketeering activity in its operations. Id. at 51. In Haroco, in what may be termed dicta, the Seventh Circuit Court of Appeals stated, "(s)ubsection (a) does not contain any of the language in subsection (c) which suggests that the liable person and the enterprise must be separate. Under subsection (a), therefore, the liable person may be a corporation using the proceeds of a pattern of racketeering activity in its operation." Id. at 402.

Therefore, a corporation can be held liable when it is actually **the perpetrator or beneficiary, direct or indirect, of the pattern of racketeering activity**, but not when it is merely the victim, prize or passive instrument of racketeering. Haroco, Inc. v. American National Bank & Trust Co., supra, at 402; See also, Masi v. Ford City Bank & Trust Co., 779 F.2d 397 (7th Cir.1985) (adopting Haroco as the holding of the Seventh Circuit; this reading of the statute is in accord with Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)). Accord Commonwealth of Pennsylvania v. Derry Construction Co., Inc., 617 F.Supp. 940 (W.D.Pa.1985)(reasoning of Haroco persuasive; finding supported by language of § 1962; logic dictates that a corporation receiving income from a pattern of racketeering activity in which it has participated as a principal, can invest that income in its own operations); Conan

8

Properties, Inc. v. Mattel, Inc., 619 F.Supp. 1167 (S.D.N.Y.1985) (not contested that liable

person and enterprise may both be the same entity for § 1962(a)).

> A corporate enterprise should be liable where it is the perpetrator,
> or the central figure in the criminal scheme. In that situation, the
> corporate deep pocket should certainly be subject to RICO
> liability. Under subsection (a), therefore, the liable person may be
> a corporation using the proceeds of a pattern of racketeering
> activity in its operations.. This result is in accord with the primary
> purpose of RICO, which, after all, is to reach those who ultimately
> profit from racketeering, not those who are victimized by it.

Haroco, Inc. v. American National Bank & Trust Co., supra, at 402; See, Cedric Kushner

Promotions, Ltd. v. King, U.S.2001, 121 S.Ct. 2087, 533 U.S. 158, 150 L.Ed.2d 198. (President

and sole shareholder of corporation that promoted boxing matches, who allegedly conducted

boxing-related affairs in violation of Racketeer Influenced and Corrupt Organizations Act

(RICO), was a "person" distinct from the enterprise which allegedly improperly conducted the

enterprise's affairs subject to liability under RICO.)   The "person" and "enterprise" combination

liability under RICO can occur when the corporation actually is the direct beneficiary of the

pattern of racketeering or where purpose of suit is to require it disgorge illegally obtained

proceeds or to reach the proceeds of illegal activities.   Garbade v. Great Divide Min. and Mill.

Corp., C.A.10 (Colo.) 1987, 831 F.2d 212. See also, U.S. v. Freshie Co., E.D.Pa.1986, 639

F.Supp. 441. (Defendant who allegedly received proceeds from racketeering activity and then

invested them in his own enterprise could be liable for RICO violation;  person who received

proceeds and enterprise in which proceeds were invested did not have to be distinct entities.)

See also, Dyanabest Inc. v. Yao, 760 F. Supp. 704, (E.D. Il. 1991)(held 1962(a) RICO claim

valid against racketeering organization and investor because investment of income in

racketeering organization wrought injury on plaintiffs when acquisition of income from racketeering activities was a benefit to investors and racketing organization)

Moreover, the Third Circuit in Petro-Tech permits Plaintiffs alleging a 1962(a) claim, to proceed against Defendants under a theory of aiding and abetting. The Third Circuit asserted rationale in support of the imposition of civil RICO liability under the aiding and abetting theory which is two-fold. First civil RICO liability is dependent upon the commission of a pattern of criminal acts. Second, it is a general rule that anyone who aids and abets a crime is just as guilty of the crime as the actual perpetrator. Aider and abettor liability under Racketeer Influenced and Corrupt Organizations Act (RICO) exists where the plaintiff establishes existence of an independent wrong, knowledge of that wrong and substantial assistance on the part of the aider or abettor to effectuate that wrong.  Wiley v. Hughes Capital Corp., D.N.J.1990, 746 F.Supp. 1264. Accordingly, anyone who aids and abets the crimes leading up to a RICO violation should be just as liable for them as the actual criminal.

### ii.     Legal Standard for Liability under §1962(b)

Subsection 1962(b) prohibits any person from acquiring any interest in, or exerting control over, an enterprise through a pattern of racketeering activity. Subsection 1962(b) reads as follows:

> It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(b). See also, Dyanabest Inc. v. Yao, 760 F. Supp. 704, (E.D. Il. 1991)(held 1962(b) RICO claim valid against racketeering organization and investor because investment of income in racketeering organization wrought injury on plaintiffs when acquisition of income

10

from racketeering activities was a benefit to investors and racketing organization.

"From plaintiffs' claims, it is possible to find that Midas gained a benefit in Dynabest U.S.A. as a result of Yao's actions. Midas allegedly gained Dynabest U.S.A.'s inventory, capital, employees and customers because of Yao's activities. As for an interest in Midas itself, the company was established because of Yao's actions. This claim, then, can be brought against both Yao and Midas.")

### iii.   Legal Standard for Liability under §1962(c)

Subsection 1962(c) prohibits any person employed by or associated with an enterprise from conducting the affairs of that enterprise through a pattern of racketeering activity. Subsection 1962(c) reads as follows:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). Liability under Section 1962(c) is limited to those who participate in the operation or management of the enterprise itself. Baglio v. Baska, 940 F. Supp. 819 (U.S. Dist. W.D. Pa. 1996) quoting Reves v. Ernst & Young, 507 U.S. 170, 194–96, 113 S.Ct. 1163, 1178, 122 L.Ed.2d 525 (1993). This includes upper management as well as lower-level employees acting under their direction. Id. An enterprise also may be operated or managed by outsiders, where they exert control over the enterprise. It must be recognized that subsection 1962(c) requires only a showing of participation in the enterprise's affairs. Clearly, no evidence of income source or control of an enterprise are required

### iv.    Legal Standard for Liability under §1962(d)

Lastly, subsection 1962(d) prohibits only a conspiracy to violate subsections (a), (b), or (c). A Defendant who is incapable of committing Racketeer Influenced and Corrupt Organizations Act (RICO) violation nevertheless may be liable for RICO conspiracy.   Department of Economic Development v. Arthur Andersen & Co. (U.S.A.), S.D.N.Y.1996, 924 F.Supp. 449. Proof of an enterprise is not an essential element of the offense of conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act (RICO).   U.S. v. Applins, C.A.2 (N.Y.) 2011, 637 F.3d 59.

Liability for RICO conspiracy is proved by showing existence of an enterprise affecting interstate commerce, defendant's knowingly joining the conspiracy to participate in the conduct of the affairs of the enterprise, defendant's participation in the conduct of the affairs of the enterprise, and defendant's doing so through a pattern of racketeering activity by agreeing to commit or committing two or more predicate offenses.   Aetna Cas. Sur. Co. v. P & B Autobody, C.A.1 (Mass.) 1994, 43 F.3d 1546. Allegations were sufficient to state a claim of conspiracy under Racketeer Influenced and Corrupt Organizations Act (RICO); when plaintiff alleged that defendant was aware of fraudulent RICO enterprise and intended to participate in it, that defendant worked with other alleged RICO conspirators and personally furthered such conspiracy.   Natomas Gardens Inv. Group, LLC v. Sinadinos, E.D.Cal.2010, 710 F.Supp.2d 1008. In order to establish defendant's involvement in Racketeer Influenced and Corrupt Organizations Act (RICO) conspiracy, a plaintiff need only prove that defendant, by his words or actions, objectively manifested agreement to participate directly or indirectly in affairs of enterprise through pattern of racketeering activity.   U.S. v. Beasley, C.A.11 (Fla.) 1996, 72 F.3d 1518.

12

A personal agreement to commit two predicate acts is not a prerequisite to Racketeer

Influenced and Corrupt Organizations Act (RICO) conspiracy liability.  U.S. v. Dempsey,

N.D.Ill.1990, 768 F.Supp. 1256. A Defendant can be liable for conspiring to violate Racketeer

Influenced and Corrupt Organizations Act (RICO) by merely agreeing to commission of

predicate acts, even though defendant does not agree to commit those acts personally.  Federal

Ins. Co. v. Ayers, E.D.Pa.1990, 741 F.Supp. 1179, reconsideration denied 760 F.Supp. 1118.

It is not necessary for conspiratorial agreement to be express, so long as its existence can

plausibly be inferred from words, actions, and interdependence of activities and persons

involved.  Aetna Cas. Sur. Co. v. P & B Autobody, C.A.1 (Mass.) 1994, 43 F.3d 1546.

See also, Terrell v. Childers, N.D.Ill.1993, 836 F.Supp. 468 (held allegations of investor and his

wife were sufficient to raise inference of agreement required to support claims against

investment advisors for conspiracy to commit fraud and for conspiracy under Racketeer

Influenced and Corrupt Organizations (RICO) Act;  complaint included occasions on which two

or more advisors acted together, and alleged that officers of investment advice firm worked

closely and had extensive individual and collective involvement in financial affairs of investor

and his wife.)  See also, Perlman v. Zell, N.D.Ill.1996, 938 F.Supp. 1327, affirmed 185 F.3d 850

(held investor in partnership units of real estate partnership satisfied requirements for stating

cause of action under conspiracy to violate RICO, that conspirators knew that predicate acts were

in furtherance of illegal scheme;  complaint alleged that promoters knew that acts were part of

pattern of racketeering activity and agreed to commission of those acts to further schemes

described above, Federal Rules of Civil Procedure allowed for knowledge and conditions of

mind of person to be averred generally, and agreement may also be inferred when they are

alleged as in present case, to have worked closely together in business setting.)

Furthermore, even if plaintiffs do not have intimate details on how defendants formed conspiratorial agreements, pleading out the essential elements, are sufficient to state a RICO conspiracy claim. In re Lupron Marketing and Sales Practices Litigation, D.Mass.2003, 295 F.Supp.2d 148. An individual may be convicted of Racketeer Influenced and Corrupt Organizations Act (RICO) violation even though individual did not know all coconspirators and details of enterprise or participate in every venture.   U.S. v. Young, C.A.11 (Fla.) 1990, 906 F.2d 615. Culpability under conspiracy provisions of this section is established by showing that the defendant manifested his assent to participate, either directly or indirectly, in the affairs of the conspiracy through the commission of two or more predicate crimes;  it is unnecessary to prove that a conspirator had full knowledge of every detail concerning the conspiracy, rather, it is sufficient to show that he had knowledge of the "essential nature of the plan."   U.S. v. Kopituk, C.A.11 (Fla.) 1982, 690 F.2d 1289.

> **v.      Plaintiffs have properly pled RICO claims because Google Ventures, LLC has violated §1962(a), 1962(b), 1962(c), and 1962(d)**

In order for a Plaintiff, such as Plaintiffs herein to state a claim for civil damages under a RICO claim, a Plaintiff need only allege that he was injured in business or property by reason of violation of Section 1962. Second, a Plaintiff need only allege that the Defendant(s) violated section 1962. Here, Defendant Google Ventures, LLC misinterprets the law when it claims it should not be liable because it is merely a passive investor, akin to an ignorant shareholder that unwittingly invests into a company. Google Ventures, LLC also claims in its Motion to Dismiss that it only knew the company's business plan and thereby disavowed any knowledge that the Illegal Taxicab Enterprise, in which it invests, has violated the law. This is simply not true. Plaintiffs' Complaint avers the following:

14

317. Upon information and belief, on or about August 13, 2013, and again, on or about June 6, 2014, Defendant Google acquired an interest in Uber.

318. Upon information and belief, Defendant Google was aware that Defendant Uber was operating as an unauthorized "gypsy cab" service.

319. Upon information and belief, at the time of making its investment, Defendant Google was aware of Defendant Uber's plan to use these funds to implement its plan to operate illegally in Philadelphia, and elsewhere.

320. Upon information and belief, the value of Defendant Google's investment in Defendant Uber has increased its value exponentially.

321. Upon information and belief, Defendant Google has leveraged such increase in value to invest in other securities or business involved in interstate commerce from which it derived its income.

Plaintiffs' Complaint, ¶317-321. Accepting the allegations of the Complaint as true which is the standard in a 12(b)(6) Motion to Dismiss, Defendant Google Ventures, LLC has violated 1962 because it was completely aware that it was investing in a racketeering enterprise. Furthermore, Google Ventures, LLC, is no mere passive investor; David Drummon, Google Ventures, LLC's chief legal officer and senior vice president of corporate development, **joined the Uber Board of Directors in 2013.** Defendant Google Ventures, LLC has misrepresented to the Court that they are merely passive investors and have no knowledge of any unlawful activity that Uber engages in. To the contrary, Google Ventures not only has knowledge, it also manages, directs, and participates in the actions of Uber.

Google Ventures, LLC also claims that neither Uber, the Illegal Taxicab Enterprise, nor itself commits in any fraud if "the customer receives exactly what it pays for." This is simply not true. Plaintiffs' Complaint alleges that Uber routinely engages in "surge pricing," and in fact has

charged consumers well over $500.00 for an eighteen mile ride. See, Uber Charges Denver Man $539 for an 18 Mile Cab Ride. http://kdvr.com/2014/11/01/how-to-avoid-getting-burned-by-uber/. Online. April 13, 2015. It is difficult to see how charging egregious amounts of money and manipulating consumers, gives customers what they pay for, or is a benefit to the bargain. Furthermore, during the ride with Uber, unlike in lawfully regulated taxi cabs, customers are unable to see a meter so they are not aware of what they are charged during the trip, they must simply accept whatever fare Uber decides to withdraw from their bank account or credit card. Moreover, Google Ventures, LLC, is misinformed when it claims that regulatory violations do not constitute fraud. The wire fraud perpetrated by the Defendants exists by the fact that consumers are being charged for a service for which the Defendants have no lawful authority to provide. Therein lies the fraud.

Defendant Google Ventures, LLC also misrepresents the law, when it claims that the enterprise must be a victim in order for a 1962 claim to stand. See also, NOW v. Scheidler, 510 U.S. 249, 259 n. 5, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994) (noting that an "enterprise" under Section 1962(c) is "generally the vehicle through which the unlawful pattern of racketeering is committed, rather than the victim of that activity"). "Whether the enterprise is the prize, victim, instrument, or perpetrator, this requirement ensures that all RICO enterprises have a structure and some mechanism for "controlling and directing the affairs of the enterprise on an on-going, rather than ad hoc basis." United States v. Riccobene, 709 F.2d 214, 222–23 (3d Cir.1983); Bachman v. Bear Stearns & Co.,178 F.3d 930, 932 (7th Cir.1999). There is no requirement that the enterprise be a victim.

Accepting the allegations in the Complaint as true, which the court must do in reviewing a Motion to Dismiss, Plaintiff has properly pled each element of the RICO claims against

16

Defendants. First, Plaintiff has suffered a competitive and monetary injury due to fraud and misrepresentations and investments of the Defendants in the Illegal Taxicab Enterprise. The investments made by Google Ventures, LLC continue to harm Plaintiffs because it has provided Uber and the Illegal Taxicab Enterprise a means to expand throughout the entirety of Pennsylvania, further affecting Plaintiffs' business and property. Second, by virtue of the fact that Google Ventures, LLC failed to mention that its President is on the Board of Directors of Uber and is just simply not a mere passive investor as it misrepresents to the Court, is sufficient to prove that Google Ventures, LLC (1) is a direct or indirect beneficiary of the racketeering activity; 1962(a); (2) has a acquired an interest in or controls racketeering activity 1962(b); (3) is associated with the enterprise 1962(c) and (4) conspired to violate the sections of the RICO Act (1962(d). Therefore, Plaintiff's RICO claims must stand.

## IV.    CONCLUSION

In light of the foregoing, Plaintiffs respectfully request this Honorable Court to deny Defendant Google Ventures, LLC's Motion to Dismiss.

Respectfully Submitted,

MICHAEL S. HENRY, ESQUIRE
ZACHARY L. GRAYSON, ESQUIRE
SELAH T. WYCHE, ESQUIRE
Salaman, Grayson & Henry, P.C.
100 S. Broad Street, Suite 650
Philadelphia, PA 19110
Telephone (215) 568-1500
Facsimile (215) 557-6353

Date: April 13, 2015