**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **CHECKER CAB PHILADELPHIA, INC. t/a 215-GET-A-CAB, et al.,** | : | |
| | : | |
| **PLAINTIFFS,** | : | |
| | : | |
| **v.** | : | **Case No. 2:14-cv-07265-NIQA** |
| | : | |
| **UBER TECHNOLOGIES, INC., et al.,** | : | |
| | : | |
| **DEFENDANTS.** | : | |
| | : | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
UBER TECHNOLOGIES, INC., GEGEN, LLC, RASIER-PA, LLC,
TRAVIS KALANICK, AND JON FELDMAN'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT**

**REED SMITH LLP**
Carolyn P. Short (I.D. No. 38199)
Shannon E. McClure (I.D. No. 164502)
Nipun J. Patel (I.D. No. 208130)
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA  19103-7301
215-851-8100
cshort@reedsmith.com
smcclure@reedsmith.com
npatel@reedsmith.com

A. Scott Bolden (admitted *pro hac vice*)
1301 K Street, N.W.
Suite 1000 - East Tower
Washington, DC 20005
202-414-9200
abolden@reedsmith.com

Dated:  August 7, 2015

*Attorneys for Defendants Uber Technologies, Inc.,
Travis Kalanick, Jon Feldman, Gegen, LLC, and
Rasier-PA, LLC*

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................1

II.   ARGUMENT .....................................................................................................2

      A.   Plaintiffs Cannot Use The Lanham Act Or Pennsylvania's Unfair
           Competition Law To Manufacture A Private Right Of Action Where
           One Does Not Exist ..................................................................................2

           1.   Because Plaintiffs Have No Private Right Of Action, Dismissal
                Is Warranted ................................................................................. 3

           2.   Plaintiffs' Primary Jurisdiction Argument Is A Red Herring .................... 5

      B.   Plaintiffs Have Not Stated A Plausible Claim For Unfair Competition .................8

           1.   The Restatement (Third) of Unfair Competition Is Not The
                Law In Pennsylvania ....................................................................... 8

           2.   Even If the Restatement (Third) Applied, Plaintiffs Have No
                Viable Claim ................................................................................ 10

           3.   Plaintiffs' Property Rights Cases Are Inapposite ................................... 12

      C.   Plaintiffs' Lanham Act False Advertising Claims Should Be Dismissed.............14

      D.   Plaintiffs RICO Claims Should Be Dismissed.....................................................15

           1.   Plaintiffs Wholly Fail to Establish RICO Standing ................................ 15

           2.   Plaintiffs Fail to State Claims for Violation of RICO § 1962(a),
                (b), (c), and (d) ............................................................................ 17

III.  CONCLUSION...................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Accenture Global Services GMBH v. Guidewire Software Inc.*,
    581 F. Supp. 2d 654 (D. Del. 2008) ........................................................................14

*Alexander v. Sandoval*,
    532 U.S. 275 (2001) ..................................................................................................12

*Allstate N.J. Ins. Co. v. Summit Pharmacy, Inc.*,
    No. 13-5809, 2014 WL 1767528 (D.N.J. May 2, 2014) ..........................................16

*Anderson v. Ayling*,
    396 F.3d 265 (3d Cir. 2005) .....................................................................................16

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006) ........................................................................................2, 15, 16

*Balt. Bank for Coops. v. Farmers Cheese Coop.*,
    583 F.2d 104, 108 (3d. Cir. 1978) ..............................................................................5

*Barbieri v. Wells Fargo & Co.*,
    No. 09-3196, 2014 WL 7330461 (E.D. Pa. Dec. 22, 2014) .....................................17

*Bonavitacola Elec. Contractor, Inc. v. Boro Developers, Inc.*,
    87 F. App'x 227 (3d Cir. 2003) .................................................................................17

*Burford v. Sun Oil Co., Inc.*,
    319 U.S. 315 (1943) ....................................................................................................5

*Chriropractic Am. v. LaVecchia*,
    180 F.3d 99 (3d Cir. 1999) ..........................................................................................5

*Cort v. Ash*,
    422 U.S. 66 (1975) ..............................................................................................11, 12

*Dial A Car, Inc. v. Transportation, Inc.*,
    82 F.3d 484, 485 (D.C. Cir. 1996) ...........................................................3, 4, 5, 6, 8

*Ettore v. Phila. Television Broad. Corp.*,
    229 F.3d 481 (3d Cir. 1956) .....................................................................................13

*Frederico v. Home Depot*,
    507 F.3d 188 (3d Cir. 2007) .....................................................................................15

*Gen. Am. Tank Car Corp. v. El Dorado Terminal Co*,
    308 U.S. 422, 433 (1940) ............................................................................................6

*Greater Houston Transp. Co. v. Uber Techs., Inc.*,
  No. 14-0941, 2015 WL 1034254 (S.D. Tex. Mar. 10, 2015) ...................................................8

*Haroco, Inc. v. American National Bank &Trust Co. of Chicago*,
  747 F. 2d 384 (7th Cir. 1984) ...........................................................................................18

*Hemi Grp., LLC v. City of New York*,
  559 U.S. 1 (2010)....................................................................................................14, 15, 16

*International News Service v. Associated Press*,
  248 U.S. 215 (1918)..........................................................................................................12, 13

*Johnson v. Heimbach*,
  No. 03-2483, 2003 WL 22838476 (E.D. Pa. Nov. 25, 2003),
  *aff'd* 112 F. App'x 866 (3d Cir. 2004)....................................................................................16

*Macauley v. Estate of Nicholas*,
  7 F. Supp. 3d 468, 479-80 (E.D. Pa. 2014)...........................................................................16

*McKenna v. Ortho Pharma. Corp.*,
  622 F.2d 657, 663 (3d Cir. 1980)............................................................................................8

*Nat'l Org. for Women, Inc. v. Scheidler*,
  510 U.S. 249, 258-59 (1992) ..................................................................................................18

*Pottstown Daily News Publishing Co. v. Pottstown Brodcasting Co.*,
  192 A.2d 657 (Pa. 1963) .........................................................................................................13

*Riley v. Simmons*,
  45 F.3d 764 (3d Cir. 1995).......................................................................................................5

*Sandoz Pharmaceuticals Corp. v. Richardson-Vicks, Inc.*,
  902 F.2d 222 (3d Cir. 1990)......................................................................................3, 4, 6, 8, 14

*Tincher v. Omega Flex, Inc.*,
  104 A.3d 328 (Pa. 2014) .......................................................................................................1, 9

*United States v. W. Pac. R.R.*,
  352 U.S. 59 (1956) ...............................................................................................................5, 6

*Vallies v. Sky Bank*,
  432 F.3d 493, 495 (3d Cir. 2006).............................................................................................11

*Wagner v. PennWest Farm Credit Act, ACA*,
  109 F.3d 909 (3d Cir. 1997)....................................................................................................11

*Waring v. WDAS Broad. Station, Inc.*,
  194 A. 631 (Pa. 1937) .............................................................................................................13

- iii -

*Williams v. City of Harrisburg*,
No. 1:12-CV-1566, 2013 WL 182741 (M.D. Pa. Jan. 17, 2013)..............................................14

*Wisniewski v. Rodale, Inc.*,
510 F.3d 294 (3d Cir. 2007)..................................................................................................12

**Statutes & Regulations**

18 U.S.C. § 1962(a) – (d)...................................................................................................17, 18

18 U.S.C. § 1964(c) .........................................................................................................15, 16

52 Pa. Code § 1001.1 *et seq.*................................................................................................10

52 Pa. Code §§ 1003.41 – 1003.43 .................................................................................10, 11

53 Pa. C.S. § 5705 ...............................................................................................................10

53 Pa. C.S. § 5705(d) ...........................................................................................................11

53 Pa. C.S. § 5725 (2011) .....................................................................................................10

**Rules**

Fed. R. Civ. Proc. 9(b) .........................................................................................................17

**Other Authorities**

Restatement (Second) of Torts § 874.....................................................................................11

Restatement (Third) of Unfair Competition ...............................................................1, 8, 9, 11

Restatement (Third) of Unfair Competition § 1 cmt. a............................................................10

## I.    <u>INTRODUCTION</u>

Plaintiffs (wrongly) claim that Defendants are operating an illegal taxi service in Philadelphia, and that Plaintiffs—a private group of taxicab operators and a taxicab dispatching company—are therefore entitled to money damages and injunctive relief. But, Plaintiffs' Opposition to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint only confirms that Plaintiffs have not stated, and cannot state, a viable claim for relief.

*First*, controlling Third Circuit precedent (previously relied upon by this Court) precludes Plaintiffs' attempt to manufacture a private right of action for assumed violations of local taxi laws that do not themselves provide for a right of action. Plaintiffs' inability to answer this authority confirms that Plaintiffs' claims fail as a matter of law. Moreover, the Legislature deliberately amended the applicable regulations to eliminate any right of action. That unambiguous demonstration of legislative intent further dooms Plaintiffs' claims.

*Second*, Plaintiffs cannot state a claim for unfair competition. Pennsylvania ***has not*** adopted the Restatement (Third) of Unfair Competition. In fact, just this past year, the Pennsylvania Supreme Court warned that courts predicting its law should not assume that Restatements would be adopted wholesale, stating that it would be "difficult to imagine a modern court simply adopting something so broad-based and legislative in character as an outside organization's Restatement of the Law." *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 352-54 (Pa. 2014). The unfair competition analysis ends here. Moreover, even if Pennsylvania had adopted the cited section of the Restatement (Third) of Unfair Competition, it does not support Plaintiffs' position because the comment relied upon by Plaintiffs explicitly contemplates a legislative scheme consistent with a private right of action. The scenario here is the polar opposite—the state statute at issue does not afford Plaintiffs any right to bring a private civil action.

*Third*, Plaintiffs have no answer for the serious pleading defects with their Lanham Act false advertising claim.  Most notably, Plaintiffs fail to allege any actual consumer confusion, which is a requirement for a false advertising claim.  Plaintiffs also fail to allege a single fact to support their conclusory assertion of proximate cause.

*Fourth*, Plaintiffs' RICO claims all must be dismissed with prejudice for lack of standing. Plaintiffs do not even attempt to confront the recent controlling Supreme Court precedent holding that mere allegations of competitive injury, without more, are insufficient to state a civil RICO claim.  *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006).  Plaintiffs also fail to address the argument that they do not have RICO standing because they have failed to allege any concrete financial injury.  These and the other fatal defects outlined in Defendants' Opening Brief mandate dismissal of Plaintiffs' RICO claims.

Despite this Court's generous grant of an opportunity to replead, Plaintiffs' Amended Complaint still fails to state a claim on all counts.  Their Complaint should be dismissed with prejudice.

## II.  ARGUMENT

### A.  Plaintiffs Cannot Use The Lanham Act Or Pennsylvania's Unfair Competition Law To Manufacture A Private Right Of Action Where One Does Not Exist

The gravamen of Plaintiffs' claims is that Defendants' operation in Philadelphia violates state and local taxi code and regulations, and therefore this Court should enjoin Uber's operations and award Plaintiffs money to compensate them.  But the Legislature amended the taxi code to eliminate the right of action Plaintiffs' claims attempt to resurrect.  Accordingly, Plaintiffs' claims fail for the basic reason that Plaintiffs do not have the right to bring a private

cause of action in federal court to seek redress for these grievances.[1]   Thus, the portions of

Plaintiffs' unfair competition, Lanham Act, and RICO claims that rely solely on Plaintiffs'

proffered interpretation of taxi regulations must be dismissed.

> 1.   Because Plaintiffs Have No Private Right Of Action, Dismissal Is
> Warranted

Remarkably, for all of their irrelevant arguments, Plaintiffs give short shrift to the

controlling Third Circuit precedent, *Sandoz Pharmaceuticals Corp. v. Richardson-Vicks, Inc.*

Plaintiffs' only mention of *Sandoz* and its compelling companion, *Dial A Car, Inc. v.*

*Transportation, Inc.*, is to argue that these cases are not binding because they do not address the

(irrelevant) primary jurisdiction doctrine, and that they have only "limited persuasive value"

because they do not apply Pennsylvania law or "deal with issues pertaining to the regulation of

on demand passenger service in Philadelphia."   Pls.' Opp. to Defs.' Mot. to Dismiss at 28-29

(ECF No. 71, July 27, 2015).   These cursory attempts to distinguish controlling, on-point authority

fail.

In *Sandoz*, 902 F.2d 222 (3d Cir. 1990), Sandoz challenged Vicks' labeling of its

Pediatric 44 cough syrup.   *Id.* at 223.   Vicks responded that while the FDA could bring a cause of

action for misbranding under the Food, Drug and Cosmetic Act ("FD & C Act"), private

plaintiffs like Sandoz lacked any right to bring a Lanham Act claim to enforce the FDA's

standards.   *Id.* at 230-31.   In rejecting Sandoz's arguments, the Third Circuit refused to "usurp

administrative agencies' responsibility for interpreting and enforcing potentially ambiguous

regulations," because:

---

[1]   Notably, these claims also should fail for the basic reason that the relevant statutes do not apply to Uber, as Uber operates a smartphone application and not a taxi service; this Court, however, need not even reach this conclusion because Plaintiffs lack standing to bring these claims here in the first instance.

> [j]urisdiction for the regulation of the [over-the-counter] drug marketing is vested jointly and exhaustively in the FDA and the FTC . . . .  Neither of these agencies' constituent statutes creates an express or implied private right of action, and what the FD & C Act and the FTC Act do not create directly, the Lanham Act does not create indirectly, at least not in cases requiring original interpretation of these Acts or their accompanying regulations.

*Id.* (citations omitted).

In *Dial A Car*, a limo service brought a Lanham Act false advertising claim against taxicab companies that allegedly provided corporate transportation services outside of the counties in which they were licensed to operate.  82 F.3d 484, 485 (D.C. Cir. 1996).   The limo service claimed that the taxi companies falsely asserted in their promotional literature that they could lawfully perform these corporate services within the District of Columbia.  *Id.*  The D.C. Circuit found that the limo service's claim was "more appropriately viewed as a disagreement about the proper interpretation of local taxicab regulations promulgated by the D.C. Taxicab Commission," which had not resolved this disagreement on the agency level.  *Id.* at 485, 489-90. Applying *Sandoz*, the court held that if the limo service's claim were entertained, "we would be transforming the Lanham Act into a handy device to reach and decide all sorts of local law questions."   *Id.*   Thus, the court held that "[i]nstead of bringing this claim in federal court, appellant should be forced to take its argument to the D.C. Taxicab Commission and lobby the Commission to crack down on appellees' activities" (assuming those activities do in fact violate the local taxi regulations).  *Id.* at 490.  But using "the Lanham Act as a backdoor method of prosecuting this case in federal court is completely unwarranted."  *Id.*

The applicable case law counsels that the Lanham Act (and by extension, Pennsylvania unfair competition law) cannot be used by private plaintiffs to transform local administrative disputes into federal cases.  *See id.*  Instead of bringing this claim in federal court, Plaintiffs must take their argument to the appropriate local authority—the PPA.   Plaintiffs cannot use the

- 4 -

Lanham Act or unfair competition law as a backdoor method to create a private right of action where the Commonwealth did not create one.  *See id.*  Plaintiffs have no meaningful response to this binding precedent, and the portions of their unfair competition, Lanham Act, and RICO claims that depend upon adoption of their preferred interpretation of taxi regulations[2] fail to state a claim as a matter of law.

> 2.     Plaintiffs' Primary Jurisdiction Argument Is A Red Herring

Plaintiffs' Opposition Brief spends several pages discussing the "doctrine of primary jurisdiction."  *See* Pls.' Opp. at 28-34.  Plaintiffs never raised this theory in briefing their ill-fated preliminary injunction request or their equally misguided motion for reconsideration, and for good reason: in light of the fact that the primary jurisdiction doctrine has absolutely no bearing on this case.

The doctrine of primary jurisdiction[3] comes into play where both courts ***and*** an administrative tribunal have ***concurrent*** jurisdiction over a legal question:

> The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties.  "Exhaustion" applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course.  "Primary jurisdiction," on the other hand, **applies where a claim *is* originally cognizable in the courts**, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special

---

2    *See* Defs.' Br. in Supp. of Defs.' Mot. to Dismiss at 11 (ECF No. 69, July 16, 2015) (explaining which portions of Plaintiffs' Complaint are fundamentally infirm because they rely on Plaintiffs' preferred interpretation of taxi regulations).

3    Primary jurisdiction is very similar to the related doctrine of *Burford* abstention.  In *Burford v. Sun Oil Co.*, "the Supreme Court stated that a federal court should refuse to exercise its jurisdiction in a manner that would interfere with a state's efforts to regulate an area of law in which state interests predominate and in which adequate and timely state review of the regulatory scheme is available."  *Chriropractic Am. v. LaVecchia*, 180 F.3d 99, 104 (3d Cir. 1999) (citing 319 U.S. 315 (1943)).  The Third Circuit has held that "the proper disposition of a case to which *Burford* abstention applies is a 'dismissal of the action, rather than retention of jurisdiction pending a state determination."  *Riley v. Simmons*, 45 F.3d 764, 770 (3d Cir. 1995) (citing *Balt. Bank for Coops. v. Farmers Cheese Coop.*, 583 F.2d 104, 108 (3d. Cir. 1978)).

competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.

*United States v. W. Pac. R.R.*, 352 U.S. 59, 64 (1956) (emphasis added) (quoting *Gen. Am. Tank Car Corp. v. El Dorado Terminal Co.*, 308 U.S. 422, 433 (1940)).

Plaintiffs thus argue that this federal court should interpret, apply, and enforce Philadelphia's taxi regulations (despite the indisputable ambiguities in those regulations), or suspend this case to allow the relevant administrative agency, the Philadelphia Parking Authority ("PPA"), to evaluate whether Uber's operations are legal. Pls.' Opp. at 34-35. But what Plaintiffs fail to articulate is that the primary jurisdiction doctrine *only* comes into play *if* a private right of action exists in the first place—which is not the case here. The Uber Defendants seek dismissal of Plaintiffs' claims because under *Sandoz* and *Dial A Car*, the Plaintiffs lack the right to bring their claims that Uber's operations violate Philadelphia's taxi regulations.

In contrast, the primary jurisdiction doctrine relies upon the assumption that ***both*** the courts and an administrative tribunal have jurisdiction over a claim filed in court. In this sense, the doctrine is more of a forum-related concept. *If* both this federal court and the PPA had concurrent primary jurisdiction over Plaintiffs' claims, this Court would have two options: (1) determine that the PPA had previously and unambiguously issued a formal ruling on the issue at hand, and thus rely on that ruling without having to construe ambiguous or untested regulations or laws, or (2) determine that the legal issue involves the special expertise of the PPA, which had not yet ruled on the issue, and thus retain jurisdiction over this case but suspend ruling until the PPA issues a final ruling.

But here, there is no "concurrent" jurisdiction between this Court and the PPA. Instead, the PPA is the *only* adjudicatory body that can enforce taxi regulations because the regulations do not provide private parties like Plaintiffs a private right of action. Thus, the primary

jurisdiction doctrine has no application here because the precursor to its application—that the Court have jurisdiction in the first place—is not met.

Moreover, even if this Court did have jurisdiction (which it does not, as shown *supra* in section II.A.1 and *infra* in section II.B.2), there is no prior unambiguous and formal ruling from the PPA regarding Uber's operations, and thus nothing that would permit this Court to conclude that the PPA had previously interpreted the taxi regulations in Plaintiffs' favor.[4]   Plaintiffs suggest that they are simply asking the Court to enforce the PPA's official, formal interpretation of the applicable statutory scheme.  *See* Pls.' Opp. at 32-34.  Plaintiffs' suggestion is, however, disingenuous—***because the PPA has not spoken***.  Indeed, even the recent PPA adjudications against Individual Driver Defendants are a far cry from any sort of official, formal opinion from the PPA on the question of whether Uber's operations are governed by Philadelphia taxi regulations.  *See* Am. Comp. ¶¶ 150-152.  These adjudications are not final and are likely to be appealed and very possibly overturned.  And contrary to Plaintiffs' misrepresentation that "the Authority has found that ***defendants*** violate Section 5714," Pls.' Opp. at 7 (emphasis added), the

---

[4]    Plaintiffs' Opposition repeatedly references various statements from the Pennsylvania Utility Commission ("PUC").  *See, e.g.*, Pls.' Opp. at 7-8 & n.3 (summarizing a PUC decision to permit uberX to operate throughout most of the Commonwealth of Pennsylvania).  But the PUC rulings have no application within Philadelphia as a matter of jurisdiction, as Plaintiffs acknowledge.  *See* Pls.' Opp. at 7-8 (noting that the PUC's ruling had no application in Philadelphia because the PUC lacked jurisdiction).  Therefore, Plaintiffs' circular argument that Uber is somehow in violation of the Public Utility Code by operating within Philadelphia, "in violation of the terms of Rasier's certificate of public convenience," turns logic on its head.

Indeed, if the PUC's rulings ***did*** apply in Philadelphia, then Plaintiffs would not be here at all.  *See Application of Rasier-PA, LLC*, PUC Docket No. A-2014-2424608, at 11 (Nov. 13, 2014) ("[W]e believe that this innovative type of transportation service can be of great benefit to the traveling public and should be certificated by the Commission.  Given the myriad of differences between TNCs [transportation network companies] and the traditional taxicab industry, we do so on the basis of experimental authority, which grants operating rights for two years.  This two-year time frame is appropriate given the dynamic and evolving nature of the TNC business model."), *available at* www.puc.pa.gov/pcdocs/1330208.docx.

citations were only issued to the individuals cited by the PPA and not Uber or any of the Uber Defendants.[5]

Further, even if the PPA *had* spoken on the issue, this would not retroactively afford Plaintiffs a private right of action that would remove this case from the *Sandoz* and *Dial A Car* bar. In other words, because Plaintiffs lack a legal right to bring their taxi regulation claims in this forum, this Court does not have to reach any conclusions about the primary jurisdiction doctrine.

### B.     Plaintiffs Have Not Stated A Plausible Claim For Unfair Competition

#### 1.     The Restatement (Third) of Unfair Competition Is Not The Law In Pennsylvania

Plaintiffs claim that the Restatement (Third) of Unfair Competition ("Restatement (Third)") supports their theory that unfair competition under Pennsylvania law covers more conduct than the Lanham Act. *See* Pls.' Opp. at 4-25. But no Pennsylvania appellate court has ever adopted the Restatement (Third) in construing Pennsylvania common law unfair competition. *See* Defs.' Br. in Opp. to Pls.' Mot. to Reconsider at 8-9 (ECF No. 30, Mar. 23, 2015) (collecting cases). Thus, the Restatement (Third) simply does not apply here.

In opposing Defendants' Motion to Dismiss, Plaintiffs rely on a 1980 Third Circuit case to suggest that this Court, in forecasting state law, is obligated to consider the Restatement. *See* Pls.' Opp. at 14-15 (citing *McKenna v. Ortho Pharma. Corp.*, 622 F.2d 657, 663 (3d Cir. 1980)).

---

[5]     Plaintiffs' reliance on various other PPA activities (including seizure of vehicles and prior issuance of citations) is similarly unavailing as these activities do not constitute an unambiguous, formal statement from the PPA. *See Greater Houston Transp. Co. v. Uber Techs., Inc.*, No. 14-0941, 2015 WL 1034254, at *11 (S.D. Tex. Mar. 10, 2015) (finding that multiple city citations and cease-and-desist letters from the chief of police "do not amount to 'clear and unambiguous statements' from the cities' regulatory agencies that Defendants are in violation of local ordinances"). Additionally, Plaintiffs' citations to various news authorities purportedly corroborating Plaintiffs' claims regarding the PPA's position that uberX service is unlawful do not appear in their Complaint and are thus not properly before this court. *See* Pls.' Opp. at 33 n.10.

But the Pennsylvania Supreme Court just last year warned federal courts predicting Pennsylvania law not to assume that it would will simply adopt Restatement provisions wholesale:

> **[I]t is difficult to imagine a modern court simply adopting something so broad-based and legislative in character as an outside organization's Restatement of the Law** . . . . [T]he adoption of a restatement formulation intended to advance the law cannot be so unmoored from existing common law and produce such a policy shift that it amounts in actuality or public perception to a derogation of legislative authority, and the concomitant suggestion that such authority is reposed in the Judiciary or in the American Law Institute.

*Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 352-54 (Pa. 2014) (emphasis added).   Thus, Pennsylvania's highest court has advised that absent a decision from that court adopting a Restatement provision, Restatements are ***not*** viewed as authoritative on Pennsylvania law. Plaintiffs' statement that there is no "persuasive data" that indicates that the Pennsylvania Supreme Court would find that that unfair competition claims under Pennsylvania common law are not coextensive with the Restatement (Third) of Unfair Competition (Pls.' Opp. at 14-15) is patently false.   To the contrary, the following is indeed persuasive (if not dispositive): (1) the failure of any Pennsylvania appellate court case to adopt the Restatement (Third), and (2) *Tincher*'s warning that in the absence of specific adoption, courts should not presume that any Restatement provision controls Pennsylvania law.[6]   In sum, because Plaintiffs' arguments that their unfair competition claim survives Defendants' Motion to Dismiss are all predicated upon the erroneous assumption that the Restatement (Third) applies, the inquiry ends here and dismissal is warranted.

---

[6]   Defendants cited numerous cases holding that the elements of a common law unfair competition claim in Pennsylvania are identical to the Lanham Act, except that the Lanham Act requires the additional element of affecting interstate commerce.   *See* Defs.' Br. in Supp. of Defs.' Mot. to Dismiss at 12 (ECF No. 69, July 16, 2015).   Plaintiffs complain that Defendants' cited cases were all cases in which a plaintiff brought both Lanham Act and Pennsylvania unfair competition claims in the same case.   *See* Pls. Opp. at 11-12 & n.5.   It is true that plaintiffs in federal court typically bring both a Lanham Act and a state common law unfair competition claim. Plaintiffs claim that they did not do so here (although as noted above, their Complaint is ambiguous regarding whether their Count I is brought under the Lanham Act or under Pennsylvania common law).   Regardless, Plaintiffs' decision to omit a Lanham Act unfair competition claim from their complaint does not insulate from dismissal the unfair competition claim they did bring.

2.      Even If the Restatement (Third) Applied, Plaintiffs Have No Viable Claim

Even if the Restatement (Third) applied (which is does not), Plaintiffs' arguments in favor of applying it here are flawed.  Plaintiffs rely on comment a to Section 1 of the Restatement (Third), claiming that this comment suggests that unauthorized competitors who enter a particular market may be subject to liability to those who, like Plaintiffs, are authorized to engage in that business, even if the legislature did not explicitly provide the authorized parties with a private right of action.  *See* Pls.' Opp. at 20-21 (citing Restatement (Third) of Unfair Competition § 1 cmt. a).[7]

First, as far as Defendants are aware, no court—whether inside or outside of Pennsylvania—has ever cited this comment.  Second, the comment specifically provides that potential liability can exist ***only*** if recognition of some private right of action is "not inconsistent with the legislative intent."  Restatement (Third) of Unfair Competition § 1 cmt. a.

Here, recognition of a private right of action ***would*** be inconsistent with the legislative intent.  Before its amendment in 2012, the General Local Government Law (which Plaintiffs allege that Defendants have violated) did authorize a right of action on behalf of the Commonwealth for its enforcement.  *See* 53 Pa. C.S. § 5725 (2011).  Amendments enacted in 2012, however, eliminated this provision in favor of a mandatory administrative complaint process.  *See* 53 Pa. C.S. § 5705; 52 Pa. Code § 1001.1 *et seq.*  Private parties may file an informal complaint with the PPA; if the PPA Enforcement Department then serves an informal complaint termination letter, a private party is then permitted to file a formal complaint.  52 Pa.

---

[7]  "One who engages in a particular business or trade in violation of a statute prohibiting such activity, either absolutely or without prescribed permission, may be subject to liability to others engaged in the business or trade if one of the purposes of the enactment is to protect the others against unauthorized competition and the recognition of a private right of action is not inconsistent with the legislative intent."  Restatement (Third) of Unfair Competition § 1 cmt. a.

Code §§ 1003.41 – 1003.43.  Appeals from this administrative process may be filed with the Philadelphia Court of Common Pleas.  53 Pa. C.S. § 5705(d).

Plaintiffs claim that these amendments, which explicitly *eliminated* the previously existing right of action, were actually intended to *preserve* a private right of action for private parties like Plaintiffs.  *See* Pls.' Opp. at 7-10.  The law, of course, mandates a different conclusion.  *See, e.g.*, *Wagner v. PennWest Farm Credit Act, ACA*, 109 F.3d 909, 910, 912 (3d Cir. 1997) (applying the *Cort v. Ash* test to determine whether there is an "implied private right of action under the Agricultural Credit Act," and concluding that "the most persuasive indication of legislative intent is Congress's decision to delete a proposed private right of action provision from the final version of the Act").  This is especially true where, as here, the plain language of the statute is unambiguous.  *See, e.g.*, *Vallies v. Sky Bank*, 432 F.3d 493, 495 (3d Cir. 2006) ("It is well-settled that where unambiguous, the plain language of a statute or regulation controls.").  The plain, unambiguous language of the General Local Government Law does not provide a private right of action.  Thus, none exists.

Plaintiffs then argue they have a private right of action because comment a to Section 1 of the Restatement (Third), which concludes with a cross-reference to Section 874 of the Restatement (Second) of Torts, provides that in certain scenarios a court may imply a private right of action where the legislature did not explicitly provide for one.  Pls.' Opp. at 20-21.  In this regard, the Pennsylvania Supreme Court adopted the United States Supreme Court's three-part test in *Cort v. Ash*, 422 U.S. 66 (1975), as providing the "beneficial framework within which to analyze whether the statute at issue implicitly creates a private right of action."  Pls.' Opp. at 22-23.  The *Cort* test is three pronged:

> First, is the plaintiff "one of the class for whose especial benefit the statute was enacted,"—that is, does the statute create a . . . right in favor of the plaintiff?

Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?

422 U.S. at 78.  Plaintiffs claim that the "most important prong" of the *Cort* test is the second one—whether there is any explicit or implicit indication of legislative intent to create a private right of action.  Pls.' Opp. at 23.  Here, as discussed above, there is indeed explicit indication of legislative intent—more than 10 years ago, the PA General Assembly ***repealed*** the Medallion Act, which had previously provided for a private of action.[8]

### 3.   Plaintiffs' Property Rights Cases Are Inapposite

Going down yet another rabbit hole, Plaintiffs rely on a handful of decades-old cases for the proposition that Pennsylvania has adopted a "broad definition of unfair competition" to "vindicate property rights from unauthorized infringement by a competitor."  Pls.' Opp. at 17-20. Even a cursory reading of these cases shows that Plaintiffs are overreaching.  These cases all have their foundation in the Supreme Court's 1918 decision in *International News Service v. Associated Press*, 248 U.S. 215 (1918).  In *International News*, the Court held that a newspaper has a "quasi property" right in the news reports it had gathered and published at great expense and effort, such that a competitor could not, in essence, steal and republish their content.  *Id.* at 236, 241-42.

Through all of these cases runs a critical thread of theft or misappropriation of a plaintiff's property. *See id.* at 242 ("[D]efendant's conduct differs from the ordinary case of

---

[8]   The Third Circuit, in *Wisniewski v. Rodale, Inc.*, 510 F.3d 294, 299-301 (3d Cir. 2007), noted that while "*Cort* has never been formally overruled, subsequent decisions have altered it virtually beyond recognition," including *Alexander v. Sandoval*, 532 U.S. 275 (2001).  "After *Sandoval*, the relevant inquiry for determining whether a private right of action exists appears to have two steps: (1) Did Congress intend to create a personal right?; and (2) Did Congress intend to create a private remedy? Only if the answer to both of these questions is 'yes' may a court hold that an implied private right of action exists under a federal statute."  *Wisniewski*, 510 F.3d at 301. Regardless of what standard is applied here, it is clear that a private right of action was not intended and permitting Plaintiffs to proceed would be inappropriate here.

unfair competition in trade principally in this that, instead of selling its own goods as those of complainant, it substitutes misappropriation in the place of misrepresentation, and sells complainant's goods as its own."); *Waring v. WDAS Broad. Station, Inc.*, 194 A. 631, 640 (Pa. 1937) ("[U]nder certain circumstances, equity will protect an unfair appropriation of the product of another's labor or talent."); *Ettore v. Phila. Television Broad. Corp.*, 229 F.3d 481, 487, 490 (3d Cir. 1956) (noting that a professional performer is considered to have a property right in his own performance and that an action may be founded on "misappropriation for the commercial advantage of one person of a benefit or a property right belonging to another").

These cases are based on a narrow exception to the general rule that the law should not stifle competition, as the Pennsylvania Supreme Court explained in in *Pottstown Daily News Publishing Co. v. Pottstown Brodcasting Co.*, 192 A.2d 657 (Pa. 1963):

> ***Competition in business is jealously protected by the law and the law abhors that which tends to diminish or stifle competition.*** While a competitor may, subject to the patent, copyright and trademark laws, imitate his rival's business practices, processes and methods, yet the protection which the law affords to competition does not and should not countenance the usurpation of a competitor's investment and toil.

*Id.* at 663 (emphasis added).

These cases are inapposite for the simple reason that Defendants have not (and are not alleged to have) misappropriated any property of Plaintiffs.  Plaintiffs' claim rests on the view that Philadelphia transportation users are the "property" of taxicab companies.  But customers and potential business opportunities are not "property."  The taxicab companies do not own Philadelphia customers, and Defendants have not misappropriated anything (or anyone).

Plaintiffs have thus cited no viable authority to call into question this Court's ruling that common law unfair competition claims in Pennsylvania track the federal Lanham Act.  The

portions of Plaintiffs' Complaint devoted to arguing that Defendants' operation violates taxi regulations do not state legally viable claims, and thus must be dismissed.

### C.   Plaintiffs' Lanham Act False Advertising Claims Should Be Dismissed

Plaintiffs' Opposition Brief contends that the statements in the October 24, 2014 email "clearly establish the *intent* to deceive the riding public and state regulators" regarding whether Philadelphia taxicabs were insured.   *See* Pls.' Opp. at 38-39 (emphasis added).   But as Defendants pointed out in their opening brief, *actual consumer confusion*, not mere intent, is a required element of a false advertising claim based on a true statement.   *See, e.g.*, *Accenture Global Services GMBH v. Guidewire Software Inc.*, 581 F. Supp. 2d 654, 667 (D. Del. 2008) (citing *Sandoz*, 902 F.2d at 228-29).   Plaintiffs offer no explanation why their Complaint fails to address this requisite element. And Plaintiffs made no attempt to cure this defect when they amended their complaint, even though Defendants raised this argument in their first Motion to Dismiss.

Plaintiffs also contend that paragraph 241 of their Complaint is sufficient to allege proximate cause.   *See* Pls. Opp. at 40.   But all that paragraph does is allege, in conclusory fashion, that Defendants' actions caused Plaintiffs to suffer some unspecified, vague harm. Comp. ¶ 241.   This is plainly insufficient under the *Twombly/Iqbal* pleading standards.   *See Williams v. City of Harrisburg*, No. 1:12-CV-1566, 2013 WL 182741, at *4 (M.D. Pa. Jan. 17, 2013) ("Plaintiffs merely assert that, '[t]he failure of the Defendant City of Harrisburg to provide the necessary training for its police officers was the proximate cause of the [injuries].'  Such an averment of causation is no more than a 'bald assertion' or 'legal conclusion,' which the Court need not credit when ruling on a motion to dismiss."); *see also Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 13-14 (2010) (explaining that where the plaintiff's RICO claim alleged only that the predicate act "directly caused" harm, that assertion was a "legal conclusion about

proximate cause").[9]   Plaintiffs' false advertising claim is inadequately pled and should be dismissed.

### D.   Plaintiffs RICO Claims Should Be Dismissed

#### 1.   Plaintiffs Wholly Fail to Establish RICO Standing

Plaintiffs' outright failure to establish standing to bring any RICO claims pursuant to 18 U.S.C. § 1964(c) requires dismissal of Counts III through VI of Plaintiffs' Complaint with prejudice.  Nothing in Plaintiffs' Opposition Briefs[10] changes this conclusion.  Indeed, Plaintiffs barely try to marshal an argument that they have RICO standing.

Plaintiffs—wrongly and without citation to authority—claim that "a competitive injury is sufficient to sustain a RICO claim." Pls.' Opp. at 41.  To the contrary, this Court need look no further than the 2006 Supreme Court decision in *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006) to confirm that the mere allegation of competitive injury, without more, is insufficient to state a civil RICO claim.  In short, a "RICO plaintiff cannot circumvent the proximate cause requirement simply by claiming that the defendant's aim was to increase market share at a competitor's expense." *Id.* at 460.  The facts in *Anza* were highly analogous to the instant case— the plaintiff claimed that the defendant's failure to comply with state regulations allowed the defendant to gain market share at the plaintiff's expense. *Id.* at 453-55.  The Court held that this

---

[9]   Plaintiffs' opposition also suggests that to the extent their false advertising claims are inadequately pled because they fail to adequately allege facts suggesting the literal falsity of the challenged statements, proximate cause, and the fact of injury, then this Court should permit them to amend their claims.  *See* Pls.' Opp. at 40.  In addition to being completely undercut by the fact that Plaintiffs made no such attempt to bolster their allegations in their Amended Complaint, Plaintiffs' request is also improper.  This Court may not consider "after-the-fact allegations" first made in a brief in opposition to a motion to dismiss "in determining the sufficiency of [a] complaint under Rules 9(b) and 12(b)(6)."  *Frederico v. Home Depot*, 507 F.3d 188, 201-02 (3d Cir. 2007).  Indeed, it is "axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Id.* at 202 (citation omitted).

[10]   In Plaintiffs' Opposition, Plaintiffs incorporated by reference their Brief in Opposition to Defendant Google Ventures, LLC's Motion to Dismiss (ECF No. 72, July 27, 2015) ("Pls.' Opp. to Google," and together with Pls.' Opp., the "Opposition Briefs").

was too tenuous a causal connection to confer RICO standing. *Id.* at 457-60. Neither of Plaintiffs' Opposition Briefs even ***mentions***, let alone attempts to distinguish, *Anza*.

Plaintiffs also fail to address the Supreme Court's 2010 decision in *Hemi Group, LLC v. City of New York*, 559 U.S. 1 (2010). In *Hemi*, the Court explained that a theory of RICO causation that is based on multiple causal steps involving actions taken by—and alleged harm done to—other third parties is not viable, as a matter of law. *Id.* at 10. That is exactly the situation presented here. Indeed, in their Response, Plaintiffs concede that their RICO theory is based on a purported "fraud ***upon the public***." Pls.' Opp. at 43 (emphasis added).

Unable to answer this overwhelming and binding authority, Plaintiffs instead attempt to distract the Court with non sequiturs and citations to older case law that is not binding on this Court. Plaintiffs are a far cry from meeting the demanding causation requirement of § 1964(c), a fact only confirmed by their Opposition Briefs. Further, Plaintiffs do not even attempt to address the separate and independent ground for dismissal under § 1964(c): they have not alleged any "concrete financial loss" that is "specific or quantifiable." *See Macauley v. Estate of Nicholas*, 7 F. Supp. 3d 468, 479-80 (E.D. Pa. 2014); *Johnson v. Heimbach*, No. 03-2483, 2003 WL 22838476, at *4 (E.D. Pa. Nov. 25, 2003), *aff'd* 112 F. App'x 866 (3d Cir. 2004).

Plaintiffs' Opposition Briefs confirm that they cannot establish RICO standing. It is further apparent that no amendment would cure these fundamental flaws. Thus, the Court should dismiss Plaintiffs' RICO claims with prejudice. *See Anderson v. Ayling*, 396 F.3d 265, 271 (3d Cir. 2005); *Allstate N.J. Ins. Co. v. Summit Pharmacy, Inc.*, No. 13-5809, 2014 WL 1767528, at *10 (D.N.J. May 2, 2014).

2.      Plaintiffs Fail to State Claims for Violation of RICO § 1962(a), (b), (c),
        and (d)

Plaintiffs' RICO claims should be dismissed for the additional and independent reason that they fail to meet the pleading standards for violation or conspiracy to violate *any* section of § 1962.  This is especially true given that Plaintiffs' RICO claims, all predicated on allegations of wire fraud, are subject to the heightened standard of Federal Rule of Civil Procedure 9(b)—a standard mentioned nowhere in their Opposition Briefs.  *See Bonavitacola Elec. Contractor, Inc. v. Boro Developers, Inc.*, 87 F. App'x 227, 231 (3d Cir. 2003).

*First*, Plaintiffs have failed to address any of the pleading deficiencies with their claim for violation of § 1962(c).  Plaintiffs' 1962(c) claim fails to the extent it relies on assumed violations of Plaintiffs' preferred interpretation of local taxi regulations for which there is no private right of action.  This claim should also be dismissed because Plaintiffs have not alleged the predicate acts of false advertising with particularity and they have not alleged a continuing pattern of racketeering conduct.  Plaintiffs make no attempt to defend these pleading failures.

*Second*, all of Plaintiffs conspiracy claims under § 1962(d) are equally infirm.  Plaintiffs confess to lacking the "intimate details" about how any RICO conspiracy was formed.  *See* Pls.' Opp. to Google at 14.  In reality, Plaintiffs' pleadings lack *any factual details at all*.  In support of these claims, Plaintiffs allege nothing more than the bare existence of a conspiracy—but this is insufficient as a matter of law.[11]  Further, in support of their 1962(a) and (b) claims, Plaintiffs have failed to allege, *inter alia*:  (1) any distinct injury; or (2) that the claimed "enterprise" was

---

[11]    *See Barbieri v. Wells Fargo & Co.*, No. 09-3196, 2014 WL 7330461, at *6 (E.D. Pa. Dec. 22, 2014). ("Plaintiffs allege that Defendants 'conspired' to violate section 1962(c). This is merely a legal conclusion. It is woefully deficient under RICO's pleading requirements.").

the victim of the racketeering conduct.  Aside from openly misrepresenting their opponents' arguments and the law,[12] Plaintiffs' Opposition Briefs take no steps to cure these infirmities.

A plaintiff seeking to assert civil RICO violations faces a substantial burden, especially when those claims are predicated on allegations of fraud.  Here, the pleading failures and legal flaws in Plaintiffs' RICO claims are extensive and severe.  Plaintiffs' Opposition Briefs simply do nothing to advance the ball.  All of Plaintiffs' RICO claims must be dismissed with prejudice.

## III.   CONCLUSION

For the reasons set forth above, and those set forth in Defendants' initial brief in support of dismissal, Defendants respectfully request the Court grant Defendants' Motion to Dismiss Plaintiffs' Complaint with prejudice.

Respectfully submitted,

s/ Carolyn P. Short
**REED SMITH** LLP
Carolyn P. Short (I.D. No. 38199)
Shannon E. McClure (I.D. No. 164502)
Nipun J. Patel (I.D. No. 208130)
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA  19103-7301
215-851-8100
cshort@reedsmith.com
smcclure@reedsmith.com
npatel@reedsmith.com

---

[12]   Plaintiffs' reliance on *Haroco, Inc. v. American National Bank &Trust Co. of Chicago*, 747 F. 2d 384, 387 (7th Cir. 1984)—a case decided only under § 1962(c)—for the proposition that the "enterprise" referenced under any section of §1962 need not be the "victim" is a mischaracterization, at best.  *See* Pls.' Opp. to Google at 16-17.  As Defendants made abundantly clear in their Motion to Dismiss, the requirement that the "enterprise" be the victim of the racketeering conduct applies to § 1962(a) and (b), and not §1962(c).  *See* Defs.' Br. at 39-40 ("Unlike in § 1962(c), the 'enterprise' referenced in § 1962(a) is the *victim* of the unlawful activity, not the *perpetrator*." (citing *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 258-59 (1992)); *id.* at 39-40 (explaining that the same standard applies to § 1962(b).

A. Scott Bolden (admitted *pro hac vice*)
1301 K Street, N.W.
Suite 1000 - East Tower
Washington, DC 20005
202-414-9200
abolden@reedsmith.com

Dated:  April 27, 2015

*Attorneys for Defendants Uber Technologies, Inc., Travis Kalanick, Jon Feldman, Gegen, LLC, and Rasier-PA, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel hereby certifies that a true and correct copy of the foregoing Defendants' Motion for Leave to File A Reply Brief in Support of Their Motion to Dismiss Plaintiffs' First Amended Complaint was electronically filed this 7th day of August 2015, causing service to be made through the Court's ECF system on all counsel of record.


<u>*s/ Carolyn P. Short*</u>
Carolyn P. Short