## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHECKER CAB PHILADELPHIA, INC.,** | : | **CIVIL ACTION** |
| *et al.* | : | |
| *Plaintiffs* | : | **NO. 14-7265** |
| | : | |
| **v.** | : | |
| | : | |
| **UBER TECHNOLOGIES, INC.,** *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                    MARCH 7, 2016

## MEMORANDUM OPINION

### INTRODUCTION

Before this Court are two separate *motions to dismiss Plaintiff's amended complaint* filed

pursuant to Federal Rule of Civil Procedure ("Rule") 12(6) for failure to state a claim on which

relief can be granted. One motion to dismiss was filed by Google Venture, LLC ("Google")

(collectively, "Defendants"), [ECF 68], and the other by Defendants Uber Technologies, Inc.,

Gegen, LLC, Rasier-PA, LLC, Travis Kalanick and Jon Feldman (collectively, the "Uber

Defendants"). [ECF 69].[1]  Plaintiffs have opposed both motions.[2]  [ECF 71, 72].  The issues set

forth have been fully briefed and, for the reasons offered herein, Google's motion to dismiss is

granted, and the Uber Defendants' motion to dismiss is granted, *in part*, and denied, *in part*.

---

[1]      On July 17, 2015, Defendants Lee Rudakewych, Shahiriar Chowdhury, William Smith, Jean Jean
Philippe, Igor Khmil, Felipe Munoz, Pharide Roufai, George Holmes, Isfandiyor Tuhsanov, John
Brennan, Felix Delahoz, Ray Reyes, Victor Fakolujo, Timothy Judelsohn, David Bieder, Waqar Y.
Grumman, and Zaye El-bey (collectively, "Defendant Drivers") filed a notice of joinder to the motion to
dismiss filed by the Uber Defendants. [*See* ECF 70].

[2]      Plaintiffs consist of 45 taxicab companies and a taxicab dispatch company which provide taxi
services in Philadelphia, Pennsylvania.

## BACKGROUND

When considering a motion to dismiss, this Court must accept, as true, all relevant factual allegations in the amended complaint, construe the amended complaint in the light most favorable to Plaintiffs, and determine whether the facts alleged show that Plaintiffs have a plausible claim for relief. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Here, the relevant factual allegations are drawn from Plaintiffs' amended complaint and are summarized as follows:

> Plaintiffs, taxicab companies and their dispatch company, facilitate and provide call or demand taxicab services in Philadelphia. (Amend. Comp. ¶¶1-4). According to Plaintiffs, taxicab and dispatch companies are regulated by the Philadelphia Parking Authority (the "Authority") and must comply with the Authority's regulations. (*Id.* at ¶¶1, 3-6). The Authority provides each Plaintiff with a certificate of public convenience and a corresponding "medallion," or license, to operate a taxicab service in Philadelphia. (*Id.*). To obtain fares, Plaintiffs use a technology platform that enables members of the riding public to order a ride at the touch of a button using a smartphone application (the "Checker App"). (*Id.* at ¶¶2-3, 87-98). The Authority has approved the Checker App for use in Plaintiffs' taxicabs. (*Id.* at ¶3).
>
> Defendant Uber Technologies, Inc. ("Uber"), is a Delaware corporation with its principal place of business in California. (*Id.* at ¶11). Uber has also developed a technology platform that uses a smartphone application (the "Uber App"), which enables members of the public to order a ride with the touch of a button. (*Id.* at ¶¶12, 49-50). According to Plaintiffs, the Authority has not approved the Uber App for use in Philadelphia. (*Id.* at ¶13).
>
> Uber uses the Uber App to provide transportation services to the public through its wholly-owned subsidiaries, Defendants Rasier and Gegen. (*Id.* at ¶¶17-18, 20, 50). Uber, Rasier, and Gegen do not own or operate any vehicles, and none has a medallion issued by the Authority. (*Id.* at ¶¶14, 19, 22, 59-60, 69-70). Defendants Rasier and Gegen engage independent drivers (the "Defendant Drivers") to provide the transportation services offered through the Uber App. (*Id.* at 61). The Defendant Drivers supply their own personal vehicles and have not been issued any medallions by the Authority. (*Id.* at ¶¶44, 62, 65, 72, 78).

On October 24, 2014, Defendants Uber and Jon Feldman ("Feldman") posted an advertisement on Uber's website and sent a blast email to its account holders in the Philadelphia Metropolitan Area, regarding the launch of UberX service in Philadelphia. (*Id.* at ¶209). The advertisement contained the following statement: "This week the largest taxi insurer went bankrupt, which means that as of 5:00 p.m. today, there is no guarantee that your taxicab will be insured." (*Id.* at ¶213).

On October 27, 2014, Uber and Feldman "tweeted" a similar advertisement on social media with a link to a post on its blog. (*Id.* at ¶210). The link provided the following statement: "In October, the largest taxi insurer in Pennsylvania went bankrupt. Many uninsured taxis are still on the road; though some may have new policies, **there's no guarantee that your taxi ride will be insured**." (emphasis in original). (*Id.* at ¶214).

Both statements were referring to First Keystone Risk Retention Group ("First Keystone"), which provided insurance to many of the Taxicab Plaintiffs and, at the time, was going through bankruptcy proceedings in South Carolina. (*Id.* at ¶¶215-17). Pursuant to an order of the bankruptcy court, all existing insurance policies issued by First Keystone were cancelled as of November 20, 2014. (*Id.* at ¶217).

On October 22, 2014, the Authority notified First Keystone policyholders with proof of insurance on file with the Authority to obtain replacement insurance coverage by October 24, 2014, at 5:00 p.m., or risk being placed out-of-service by the Authority. (*Id.* at ¶218). According to Plaintiffs, by October 24, 2014, "almost all" of the First Keystone policyholders contacted by the Authority had obtained replacement insurance coverage, and "the rest were awaiting underwriting approval." (*Id.* at ¶220). The Authority then extended its deadline to October 27, 2014, for taxicab drivers to obtain replacement insurance coverage. (*Id.* at ¶221). By October 27, 2014, "only a handful" of the First Keystone policyholders had failed to obtain replacement insurance. (*Id.* at ¶222). Notwithstanding the Authority's deadlines to obtain replacement insurance coverage, Plaintiffs contend that no First Keystone policyholders was ever placed out-of-service and no medallion taxicabs operating in Philadelphia were ever uninsured as a result of First Keystone's liquidation, because the First Keystone policies remained effective until November 20, 2014, or an earlier date when replacement coverage was secured. (*Id.* at ¶¶223, 231).

3

The alleged advertisements also contained a representation that Uber's UberX fares were 20% cheaper than a taxi's fare. (*Id.* at ¶239; *see also* Exhibits B and C). The advertisements contained three sample comparisons of Uber's fares with those of a non-Uber affiliated taxi. (*Id.*).

With respect to Google, Plaintiffs allege "upon information and belief" that: Google is an investor in Uber, (*id.* at ¶25); Google was aware that Uber was operating an unauthorized taxi cab service, (*id.* at ¶328); Google was aware of Uber's plan to use Google's investment monies to implement Uber's unauthorized taxi cab service, (*id.* at ¶329); Google's investment in Uber increased in value, (*id.* at ¶330); and Google has leveraged the increase in its investment value to invest in other securities or businesses. (*Id.* at ¶331).

Procedurally, on December 23, 2014, Plaintiffs filed a complaint against Defendants asserting the following claims: Count 1 – unfair competition under Pennsylvania common law; Count 2 – false advertising under the Lanham Act; and Counts 3-5 – claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") statute. [ECF 1]. Each of these claims was primarily premised upon Defendants' purported unauthorized and unlawful transportation services in Philadelphia, in violation of various state and local laws and regulations. On February 5, 2015, Plaintiffs filed a motion for a preliminary injunction, [ECF 12], which Defendants opposed. [ECF 19, 20]. By Memorandum Opinion and accompanying Order dated March 3, 2015, [ECF 25, 26], this Court denied Plaintiffs' motion for a preliminary injunction, concluding that Plaintiffs had failed to meet their burden of showing a likelihood of success on the merits of their claims or irreparable harm. By Order dated March 27, 2015, Plaintiffs' motion for reconsideration was denied. [ECF 37]. On April 2, 2015, Plaintiffs filed a notice of appeal of the Order denying Plaintiffs' motion for a preliminary injunction. [ECF 42]. As of the date of this Memorandum Opinion, that appeal remains pending.

Each Defendant filed a motion to dismiss Plaintiffs' original complaint, [ECF 38-40], which Plaintiffs opposed. [ECF 44-46]. While those motions were pending, on June 4, 2015, Plaintiffs filed a motion for leave to file an amended complaint, [ECF 60], which Defendants opposed. [ECF 61-63]. Plaintiffs' motion to amend was granted by Order dated June 24, 2015. [ECF 64]. Plaintiffs filed their amended complaint on June 29, 2015, asserting the same claims contained in their original complaint, with some additional alleged facts. [ECF 67]. On July 16, 2015,

Defendants filed the underlying motions to dismiss, which Plaintiffs have opposed.

## LEGAL STANDARD

When considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler*, 578 F.3d at 210-11. The court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The complaint must do more than merely allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Id.* (citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)) (alterations in original). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* To survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must allege facts sufficient to 'nudge [its] claims across the line from conceivable to plausible.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

## DISCUSSION

The crux of Plaintiffs' amended complaint is that Defendants have gained an unfair competitive advantage over traditional taxicab dispatch services and locally licensed/authorized taxicab drivers (such as Plaintiffs) because they avoid the cost and burdens of complying with

5

various state laws and local regulations that apply to taxi services in Philadelphia. Plaintiffs contend that Defendants' unlawful and unauthorized provision of taxicab services in Philadelphia violate state unfair competition laws; section 43(a) of the Lanham Act, 15 U.S.C. §1125(a); and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1961, *et seq*. Plaintiffs also allege that Defendants violated both the Lanham Act and RICO by disseminating false representations about Plaintiffs' insured status and Uber's comparable fares.[3]

Briefly, the Lanham Act provides a cause of action to a plaintiff that has been injured as a result of another's false advertising and/or false representations about its own or another's products or services. 15 U.S.C. §1125(a)(1)(B). RICO provides a cause of action to a plaintiff that has been injured as a result of another's racketeering activity. 18 U.S.C. §1964(c). In their motions to dismiss, Defendants argue that each of Plaintiffs' claims fails as a matter of law. These arguments will be discussed separately.

### Plaintiffs' claims premised on Defendants' alleged provision of taxicab services in violation of local and state regulations

Defendants argue that Plaintiffs' Lanham Act, unfair competition and RICO claims premised on Defendants' alleged violation of state and local taxi regulations fail, as a matter of law, because the alleged violation of local and state regulations, which do not provide private causes of action, cannot support the asserted claims. As support for their argument, Defendants point to a number of federal decisions in which courts have either denied a plaintiff's request for injunctive relief for violation of federal, state and local laws and regulations, or have dismissed such claims outright. This Court concurs and finds these well-reasoned decisions persuasive.

---

[3]     With respect to Google, Plaintiffs have asserted *only* their RICO claims, and not the Lanham Act and unfair competition claims asserted against the Uber Defendants. These RICO claims, however, are premised and dependent on the same alleged facts and legal analysis as Plaintiffs' claims against the Uber Defendants. In its motion to dismiss, Google has made similar arguments as those made by the Uber Defendants.

6

In *Sandoz Pharmaceuticals Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222 (3d Cir. 1990), the Third Circuit Court of Appeals affirmed the district court's denial of a plaintiff's motion for a preliminary injunction where the plaintiff sought to hold its competitor liable under the Lanham Act for various violations of federal laws and regulations.[4]  The *Sandoz* plaintiff had based its claim on its allegation that the defendant had mislabeled its product in violation of the Food, Drug & Cosmetic Act ("FD&C Act"), and that such mislabeling constituted false advertising.  In its decision, the Third Circuit noted that jurisdiction for enforcement of the regulations was vested "jointly and exhaustively in the [Food and Drug Administration] and the [Federal Trade Commission]," and that the statutes which were arguably violated by the defendant provided no private cause of action.  *Id.* at 231.  The Court further held that "what the FD&C Act and the FTC Act did not create directly, the Lanham Act does not create indirectly, at least not in cases requiring original interpretation of these Acts or their accompanying regulations," and affirmed the district court's denial of a preliminary injunction.  *Id.*  Though *Sandoz* did not address a motion to dismiss, it provides persuasive authority since the plaintiffs maintained the burden of establishing a likelihood of success on the merits of their claims.

The *Sandoz* decision has been cited and followed in cases resembling the case *sub judice*. For example, in *Dial A Car, Inc. v. Transportation, Inc.*, 82 F.3d 484 (D.C. Cir. 1996), the D.C.

---

[4]      As noted by Defendants, and an abundant line of cases from this circuit, an unfair competition claim under Pennsylvania common law is the equivalent of a federal Lanham Act claim.  *See e.g.*, *Flynn v. Health Advocate, Inc.*, 169 F. App'x 99, 101 (3d Cir. 2006) ("Thus, the analysis for the federal and common law trademark infringement and the unfair competition claims is virtually the same."); *Ecore International, Inc. v. Downey*, 2015 WL 127316, at *6 (E.D. Pa. Jan. 7, 2015); *R.J. Ants, Inc. v. Marinelli Enterprises, LLC*, 771 F. Supp. 2d 475, 489 (E.D. Pa. 2011) ("A Pennsylvania common law cause for unfair competition is identical to the Lanham Act, without the federal requirement of interstate commerce."); *Regal Indus., Inc., v. Genal Strap, Inc.*, 1994 WL 388686, at *2 (E.D. Pa. July 26, 1994) ("The elements of common law unfair competition in Pennsylvania are identical to those necessary to make out a claim under the Lanham Act, except that the Lanham Act requires interstate commerce."). As such, federal case law treatment of Lanham Act claims provides, at the very least, persuasive authority when dealing with a plaintiff's common law unfair competition claims, as in this case.

7

Circuit Court of Appeals relied on *Sandoz* to hold that private parties may not invoke the Lanham Act to create a private cause of action for enforcement of local taxi regulations. *Id.* at 488-89. Similar to this matter, the plaintiff in *Dial A Car*, a company that was licensed to provide on-call taxi services, alleged that two other taxi companies were illegally providing similar, yet cheaper, taxi services within the District of Columbia without a license to do so. *Id.* at 484. Affirming the district court's dismissal of the Lanham Act claims, the appellate court found that the plaintiff was "simply using the Lanham Act to try to enforce its preferred interpretation of [a local taxi regulation] instead of adjudicating the issue before the [local regulatory agency]. We reject such a gambit because we see no reason to reach out and apply federal law to this quintessentially local dispute, and neither appellant nor our dissenting colleague cites to any Supreme Court or federal appellate decision that authorizes us to do so." *Id.* The appellate court further pointed out that "although the [Lanham] Act has been interpreted in literally hundreds of appellate cases since its enactment in 1946, we cannot find a single case that purports to extend the Act to allow federal judges to interpret and enforce municipal regulations, thereby affording plaintiffs remedies over and above those provided by local law." *Id.* at 490 (emphasis in original). This reasoning remains true today, as this Court is unaware of any judicial decision, authoritative or otherwise, in which the Lanham Act was extended to the essential interpretation and enforcement of local regulations or to provide private causes of action where none are provided in the regulations.

As further example, a district court in Illinois, relying on the reasoning in *Dial A Car*, dismissed Lanham Act and state law unfair competition claims, similar to those claims asserted in this case, that were brought by a group of taxi drivers/associations against Uber. *See Yellow Group LLC v. Uber Technologies, Inc.*, 2014 WL 3396055 (N.D. Ill. July 10, 2014); *Manzo v.*

8

*Uber Technologies, Inc.*, 2014 WL 3495401 (N.D. Ill. July 14, 2014). As in this case, the plaintiffs in the two Illinois cases asserted Lanham Act and unfair competition claims against Uber based upon its alleged illegal operation of a taxi service in violation of various state and local ordinances. *Id.* In *Yellow Group*, the court held that "[t]o the extent that the Second Amended Complaint alleges that Uber violated the Lanham Act or its Illinois equivalents by simply operating illegally or by misrepresenting the legality of its service, those allegations fail under the rationale in *Dial A Car, Inc.*, 82 F.3d at 488." *Yellow Group*, 2014 WL 3396055, at *7. Similarly, in *Manzo*, the court dismissed the state unfair competition claims, and agreed with the reasoning in *Dial A Car* that the plaintiffs "cannot use [state unfair competition laws] 'as a backdoor method' to bring a claim that Uber violates Chicago taxi and livery regulations." *Manzo*, 2014 WL 3495401, at *4.

Similarly, in *Greater Houston Transportation Co. v. Uber Technologies, Inc.*, Civ. A. No. 14-941 (S.D. Tex. Apr. 21, 2014), the district court denied a motion for a temporary restraining order brought by taxi drivers/association plaintiffs whose claims, like those of Plaintiffs here, were premised on Uber's alleged operation of its service in violation of local ordinances. In its oral decision, the court stated:

> The Court believes that the issues that have been raised and presented by the plaintiffs are issues for the cities of San Antonio and Houston to enforce, at least at the injunction stage, and the Court is particularly concerned with doing anything to stand in the way of the political process that appears to already be underway in which the city of Houston is examining its own ordinances and trying to determine how to deal with this emerging technology and catch their ordinances up with the technology, which clearly appears to have gotten ahead of the current city of Houston ordinances.

Eleven months later, this same district court in Texas followed the analysis provided by the *Dial A Car* decision to dismiss the plaintiffs' Lanham Act and unfair competition claims premised

upon Uber's alleged violations of local and state taxi regulations and statutes. *Greater Houston Transp. Co. v. Uber Technologies, Inc.*, 2015 WL 1034254, at \*11, 20 (S.D. Tex. Mar. 1, 2015).

Most recently, in *Greenwich Taxi, Inc. v. Uber Technologies, Inc.*, 2015 WL 4774989 (D. Conn. Aug. 13, 2015), the district court dismissed Lanham Act, state unfair competition, and RICO claims brought by various taxicab associations against Uber premised, in part, on Uber's alleged violations of various state and local taxi regulations. The *Greenwich* court relied on the analysis provided in *Dial A Car* and held that the plaintiffs could not assert viable Lanham Act, unfair competition or RICO claims premised on the alleged violation of state and local taxi regulations. *Id.* at \*4-5, 9.

Similarly, Plaintiffs here premise their unfair competition claims and the bulk of their Lanham Act and RICO claims on Defendants' alleged violation of various state and local laws and regulations pertaining to the operation of taxicab services in Philadelphia. Indeed, Plaintiffs acknowledged as much in a previous brief: "The gravamen of Plaintiffs' Complaint is that the Uber defendants are operating an illegal gypsy cab operation in the City of Philadelphia in violation of law and regulation." [ECF 12 at 6]. Therefore, with respect to Plaintiffs' claims for unfair competition, Lanham Act and RICO violations, premised on the alleged unlawful or unauthorized provision of taxi services in Philadelphia, such claims are barred, consistent with the reasoning set forth in *Sandoz*, *Dial A Car*, and the cited cases discussed above.

Having dismissed all of Plaintiffs' Lanham Act, RICO and unfair competition claims against all Defendants premised on the alleged provision of taxicab services in violation of state and local regulations, this Court next addresses Plaintiffs' remaining Lanham Act and RICO claims premised on the alleged misrepresentations regarding Uber's fares in comparison to those of Plaintiffs and Plaintiffs' insured status.

**Plaintiffs' Lanham Act claims against Defendants Uber and**
**Feldman premised on statements comparing fares**

Plaintiffs assert claims under Section 43(a) of the Lanham Act against Uber and Feldman

*only*, premised upon alleged misrepresentations regarding Uber's fares in comparison to those of

Plaintiffs and the insured status of Plaintiffs. [5]  "Congress enacted section 43(a) of the Lanham

Act 'to stop the kind of unfair competition that consists of lying about goods or services.'"

*Castrol v. Pennzoil*, 987 F.2d 939, 941 (3d Cir. 1993) (citations omitted).  The applicable

provision found in §1125(a)(1), provides, in its relevant part, the following:

> (1) Any person who, on or in connection with any goods or
> services, or any container for goods, uses in commerce any word,
> term, name, symbol, or device, or any combination thereof, or any
> false designation of origin, false or misleading description of fact,
> or false or misleading representation of fact which (A) is likely to
> cause confusion, or to cause mistake, or to deceive as to the
> affiliation, connection, or association of such person with another
> person, or as to the origin, sponsorship, or approval of his or her
> goods, services, or commercial activities by another person, or (B)
> in commercial advertising or promotion, misrepresents the nature,
> characteristics, qualities, or geographic origin of his or her or
> another person's goods, services, or commercial activities, shall be
> liable in a civil action by any person who believes that he or she is
> likely to be damaged by such act.

15 U.S.C. §1125(a)(1).

To plead a viable claim for false advertising under §1125(a), a plaintiff must allege facts

sufficient to show that:  (1) defendants made a false or misleading statement in a commercial

advertisement or promotion about their own or plaintiff's products or services; (2) the statement

actually deceived, or at least had a tendency to deceive, a substantial portion of the intended

audience; (3) the deception was material in that it likely influenced purchasing decisions; (4) the

---

[5]      As noted above, Plaintiffs also assert Lanham Act claims premised on Defendants' alleged
unlawful and unauthorized provision of taxicab services in violation of state and local regulations.
Because these claims have been dismissed for the reasons discussed above, they are not addressed in the
remainder of this Memorandum Opinion.

advertised product traveled in interstate commerce; and (5) plaintiffs were likely to be or were injured by the false or misleading statement. *Ditri v. Coldwell Banker Residential Affiliates, Inc.*, 954 F.2d 869, 872 (3d Cir. 1992); *U.S. Healthcare v. Blue Cross of Greater Phila.*, 898 F.2d 914, 922-23 (3d Cir. 1990). To meet the first element, a plaintiff must assert facts to show that the challenged statement is either literally false, or true but misleading. *Ditri*, 954 F2d at 872; *U.S. Healthcare*, 898 F.2d at 922-23; *Tristate HVAC Equip., LLP v. Big Belly Solar, Inc.*, 752 F. Supp. 2d 517, 527-28 (E.D. Pa. 2010) (dismissing Lanham Act claim where the plaintiff "ha[d] not alleged sufficient facts that would support a conclusion [that the defendant's] statements . . . were false or misleading.").

"A determination of literal falsity rests on an analysis of the message in context." *Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc.*, 19 F.3d 125, 129 (3d Cir. 1994). The test for literal falsity is simple: "[i]f a defendant's claim is untrue, it must be deemed literally false." *Castrol*, 987 F.2d at 944. "In analyzing whether an advertisement or product name is literally false, a court must determine, first, the unambiguous claims made by the advertisement or product name, and second, whether those claims are false." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 586 (3d Cir. 2002). "[O]nly an *unambiguous* message can be literally false. The greater the degree to which a message relies upon the viewer . . . to integrate its components and draw the apparent conclusion . . . the less likely it is that a finding of literal falsity will be supported." *Id.* at 587 (emphasis in original). If a plaintiff alleges that the defendant's statements are not literally false, but instead merely misleading, the plaintiff must plead facts to show that the intended audience was, in fact, left with a false impression. *KDH Elec. Sys., Inc. v. Curtis Tech. Ltd.*, 826 F. Supp.2d 782, 806 (E.D. Pa. 2011) (dismissing a Lanham Act claim where the

plaintiff had merely pled that customers "may be misled" and not that customers were "actually misled.") (citing *Sandoz Pharm. Corp.*, 902 F.2d at 228-29); *see also Cannella v. Brennan*, 2014 WL 3855331, at *6 (E.D. Pa. Aug. 6, 2014); *Accenture Global Servs. GmbH*, 581 F. Supp. 2d at 667 (dismissing a Lanham Act claim because the plaintiff failed to allege that customers actually were misled by the allegedly misleading statements). Here, in their opposition brief, Plaintiffs maintain that the representations on which their Lanham Act claims are premised were literally false. Notably, Plaintiffs do not argue the alternative path, *i.e.*, that the representations are true but likely to mislead and confuse consumers.

In the amended complaint, Plaintiffs assert that Defendants Uber and Feldman violated the Lanham Act by representing that fares for services requested through UberX are "at least 20% cheaper" than Plaintiffs' taxicabs. Defendants Uber and Feldman have moved to dismiss this claim on the basis that the challenged fare statements were true and, thus, are not viable Lanham Act claims. As stated, when determining the truth or falsity of an alleged misrepresentation, a court must look at the statement in its context. *See Johnson & Johnson-Merck*, 19 F.3d at 129. The challenged blog post, included in its entirety as an exhibit to the amended complaint, provided sample pricing costs to back up Uber's statement, specifically comparing UberX rates to Philadelphia taxicab rates for three sample trips. (*See* Amend. Comp. Ex. C). These fare samples show the literal truth of the challenged statement, *i.e.*, the sample UberX rates are at least 20% lower than the sample non-Uber taxicab fares. In the amended complaint, Plaintiffs do not allege that either the UberX fares or the taxicab fares for the samples are false. Therefore, as pled, Uber's fare statements, read in the context of the entire posting, are deemed true. Notably, Plaintiffs offer no argument in their opposition in response to Defendants' legal challenges to this claim. As such, Plaintiffs' false advertising claims under the

13

Lanham Act against Uber and Feldman premised on Uber's fare statements fail, as a matter of law.

### Plaintiffs' Lanham Act claims against Uber and Feldman premised on false representations regarding Plaintiffs' insured status

Plaintiffs also take issue with Uber's publicized statements on October 24, 2014, and October 27, 2014, that, as of those dates, there was "no guarantee" that a consumer's taxicab ride in Philadelphia would be insured due to the recent bankruptcy of the largest taxicab insurer in Pennsylvania. As alleged, Uber's statements were based on the bankruptcy of First Keystone Risk Retention Group ("First Keystone"), which insured many of the taxicab drivers in Philadelphia, including Plaintiffs. (Amend. Comp. ¶213). According to Plaintiffs, the South Carolina Court of Common Pleas ordered that all existing insurance policies be cancelled *as of November 20, 2014*, as a consequence of First Keystone's insolvency. (*Id.* at ¶217). In addition, and as a consequence of the bankruptcy proceedings, on October 22, 2014, the Authority notified all First Keystone policyholders with proof of insurance on file with the Authority to obtain replacement insurance coverage by October 24, 2014, at 5:00 p.m., or risk being placed "out-of-service" by the Authority. (*Id.* at ¶218). Plaintiffs also allege that by October 27, 2014, most, but not all of the Philadelphia taxicab drivers who had been insured by First Keystone had obtained replacement coverage. (*Id.* at ¶¶220-22).

Defendants Uber and Feldman argue that in light of these pled facts, Uber's statements that as of October 24 and October 27, 2014, there was "no guarantee" that a consumer's taxicab was insured were literally true since, as of those dates, some Philadelphia taxicab drivers had not obtained replacement insurance coverage. In this Court's assessment, however, Defendants' argument fails to take into consideration Plaintiffs' factual allegation that the insurance policies at issue were valid until November 20, 2014 – more than three weeks after Uber made its "no

guarantee" statements. (*Id.* at ¶¶217, 223). Simply put, as alleged, the insurance policies were valid until November 20, 2014. Therefore, Uber's statements expressly suggesting that the insurance policies had been terminated or cancelled as of 5:00 p.m. on October 24, 2014, were literally false. Accordingly, Defendants' motion as to Plaintiffs' Lanham Act claims against Uber and Feldman premised on Uber's statements regarding Plaintiffs' insured status is denied, and these claims will proceed against Defendants Uber and Feldman.

## Proximate Cause

Defendants Uber and Feldman also contend that Plaintiffs fail to aver that they have suffered damages as a result of the alleged Lanham Act violations. "To invoke the Lanham Act's cause of action for false advertising, a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark Intern., Inc., v. Static Control Components, Inc.*, -- U.S. --, 134 S. Ct. 1377, 1395 (2014).

In response to Defendants' argument as to proximate cause, Plaintiffs point solely to the allegations in paragraph 241 of the amended complaint. (*See* Opposition at 40). This paragraph reads as follows:

> These Defendants are willfully, knowingly and intentionally making false claims and descriptions in their advertising and, unless immediately enjoined by this Court, will continue to deceive, mislead, and confuse the riding public into believing that, among other things, Plaintiffs' taxicab service is inferior, less safe, risky, more expensive, and unsuitable for its intended purpose.

(Amend. Comp. ¶241).

While paragraph 241 contains very little by way of facts, this Court is satisfied that it, in conjunction with other factual allegations in the amended complaint, sufficiently pleads that customers were induced by the alleged false representations about the insured status of Plaintiffs

15

to use Uber's services rather than those of Plaintiffs.[6]  *Cf., Greater Houston Transp. Co. v. Uber Technologies, Inc.*, 2015 WL 1034254, at *8-9 (S.D. Tex. Mar. 10, 2015) (allowing Lanham Act to proceed because plaintiffs had alleged that customers were induced by false advertising to use Uber's services rather than that of plaintiffs).  As such, Plaintiffs have sufficiently alleged proximate cause to support their Lanham Act claims against Uber and Feldman premised on Uber's alleged false representations about Plaintiffs' insured status.

### Plaintiffs' Lanham Act claims against Defendant Feldman

Defendant Feldman also argues that the Lanham Act claims asserted against him individually fail because Plaintiffs have not pled facts sufficient to connect Feldman to the alleged misrepresentations.   While the amended complaint does not contain many factual allegations directed at Feldman individually, Plaintiffs do aver that the other defendants acted "under the supervision, direction and control of Defendants Kalanick and Feldman." (Amend. Comp. ¶24).  Plaintiffs also contend that "Feldman posted" and "tweeted" the advertisements at issue. (*Id.* at ¶¶209, 210).  As such, contrary to Defendant Feldman's argument, Plaintiffs have pled sufficient facts directly connecting him to the advertisements at issue.   Accordingly, Defendant Feldman's motion to dismiss the remaining Lanham Act claim against him is denied. Therefore, the Lanham Act claim against Feldman premised on the alleged misrepresentations about Plaintiffs' insured status survives.

### Plaintiffs' RICO claims against all Defendants

Much like Plaintiffs' unfair competition and Lanham Act claims (discussed above), the bulk of Plaintiffs' RICO claims are premised on allegations that Defendants operated taxicab

---

[6]     For example, at paragraph 244, Plaintiffs allege:  "As a further direct and proximate cause of these Defendants' unlawful acts and practices, Plaintiffs have suffered, is suffering, and will continue to suffer damage to their businesses, reputation, and goodwill, and the loss of sales and profit Plaintiffs would have generated but for the acts of these Defendants."

services in violation of various state and local laws and regulations. To the extent Plaintiffs' claims are premised on an alleged unlawful enterprise consisting of unauthorized provision of taxicab services, such claims are dismissed for the same reasons previously discussed. Just as the Lanham Act cannot be used to create an otherwise nonexistent private cause of action for enforcement of state and local regulations, neither can the RICO statute. *See Greenwich Taxi, Inc.*, 2015 WL 4774989, at *9. This is just the type of "widespread abuse of civil RICO" of which courts frequently are critical. *See, e.g.*, *Midwest Grinding Co. Inc. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992).

Plaintiffs also assert RICO claims premised on allegations that Defendants engaged in wire fraud by "using the internet, social media, and email to disseminate false and misleading information about the nature and quality of the Defendants' unauthorized taxicab service and to disparage the nature and quality of authorized taxicab service, in order to fraudulently induce the riding public to use their service and not to use Plaintiffs' services." (Amend. Comp. ¶275). Specifically, Plaintiffs identify three "predicate acts:" the October 24, 2014 email; the October 24, 2014 blog post; and the October 27, 2014 tweet, all previously referenced. (*Id.* at ¶277). Defendants argue that these claims fail because, *inter alia*, Plaintiffs' allegations do not satisfy the standing requirements for a RICO claim and because Plaintiffs' allegations of false advertising do not form the requisite continuous pattern of racketeering activity necessary to assert a viable RICO claim.

### Plaintiffs' standing to assert RICO claims

Before this Court considers the sufficiency of Plaintiffs' remaining RICO claims under §1962, it must first determine the adequacy of Plaintiffs' amended complaint as it relates to the threshold issue of standing under §1964(c). To bring a civil RICO claim, a plaintiff must have

suffered an injury to its "business or property" that was proximately caused by the defendants' violation of §1962. 18 U.S.C. §1964; *see also Maio v. Aetna, Inc.*, 221 F.3d 472, 482-83 (3d Cir. 2000). Failure to plead facts to support either element is grounds for dismissal. *Anderson v. Ayling*, 396 F.3d 265, 271 (3d Cir. 2005) (dismissing RICO claims with prejudice for failure to establish the proximate causation element of standing); *Allstate N.J. Ins. Co. v. Summit Pharmacy, Inc.*, 2014 WL 1767528, at *10 (D.N.J. May 2, 2014) (dismissing RICO claims with prejudice for failure to establish the damages element of standing). To satisfy the injury requirement, a plaintiff must allege "a concrete financial loss and not mere injury to a valuable intangible property interest." *Maio*, 221 F.3d at 483; *see also Interfaith Cmty. Org. v. Honeywell Int'l*, 399 F.3d 248, 254 (3d Cir. 2005) (holding that to confer standing, a plaintiff must first demonstrate with particularity that she has suffered a concrete injury-in-fact). To meet the proximate cause requirement, the plaintiff must plead sufficient facts to plausibly assert that "the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006). There must be "some direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992). "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza*, 547 U.S. at 461. The injury alleged must "be an ascertainable out-of-pocket loss." *FL Receivables Trust v. Bagga*, 2005 WL 563535, at *3 (E.D. Pa. Mar. 8, 2005); *see also Walter v. Palisades Collection, LLC*, 480 F. Supp. 2d 797, 804 (E.D. Pa. 2007) (holding that injury to business or property requirement may be satisfied by allegations and proof of actual monetary loss). "[A]n injury that is speculative or contingent on future events does not confer RICO standing." *FL Receivables*, 2005 WL 563535, at *4. A complaint does not adequately plead a RICO violation unless it

18

alleges facts to show damage to business or property with some certainty. *Maio*, 221 F.3d at 495 (stating dismissal is appropriate when the alleged injury was "too speculative" in nature). To establish a RICO violation premised on mail or wire fraud (as Plaintiffs' claims are here), the plaintiff must also allege facts to show reliance on the defendant's alleged misrepresentations. *Lynch v. Capital One Bank (USA), N.A.*, 2013 WL 2915734, at *3 (E.D. Pa. June 14, 2013).

Here, as Defendants point out, Plaintiffs do not specifically allege that they have lost fares or have suffered damages as a direct result of Defendants' alleged misrepresentations about the insured status of Plaintiffs. As to injury and proximate cause, Plaintiffs allege only the following:

> As direct and proximate cause of the aforementioned violations of 18 U.S.C. §1962(c), each of the Plaintiffs has suffered substantial injury to its business or property within the meaning of 18 U.S.C. §1964(c), by reason of the violation of 18 U.S.C. §1962(c) committed by Defendants, including, but not limited to lost or reduced fare revenues and substantial and irreparable loss of goodwill and business opportunity with consumers and customers.

(Amend. Comp. ¶342). While these allegations are sparse with respect to specifics, giving Plaintiffs the benefit of all reasonable inferences, this Court finds that Plaintiffs have sufficiently alleged that they lost taxicab fares as a direct result of Defendants' alleged misrepresentations regarding Plaintiffs' insured status. Accordingly, this Court finds that Plaintiffs have met the standing requirement at this procedural stage.

### Plaintiffs' §1962(c) claims against all Defendants

Turning to the substance of Plaintiffs' RICO claims, Plaintiffs initially assert a claim under §1962(c), which provides, in its relevant part: "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of

such enterprise's affairs through a pattern of racketeering activity. . . ." 18 U.S.C. §1962(c). To state a claim under §1962(c), a plaintiff must allege facts to show that defendants: (1) conducted; (2) an enterprise; (3) through a pattern; (4) of racketeering activity; (5) which resulted in damage to plaintiff's business or property. *Sarpolis v. Tereshko*, 26 F. Supp. 3d 407, 426 (E.D. Pa. 2014); *Macauley v. Estate of Frank C. Nicholas*, 7 F. Supp. 3d 468, 481 (E.D. Pa. 2014). "'Racketeering activity' means one of the various predicate acts identified in the statute, including acts 'indictable' under the federal mail and wire fraud statutes." *Bonavitacola Elec. Contractor, Inc. v. Boro Developers, Inc.*, 87 F. App'x 227, 231 (3d Cir. 2003). To plead predicate acts of mail and wire fraud, a plaintiff must allege that the defendants used the U.S. mail or interstate wires in furtherance of a scheme or artifice to defraud. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1415-17 (3d Cir. 1991).

Defendants argue that Plaintiffs have failed to plead facts sufficient to meet the continuity requirement for a substantive RICO claim.[7] "A 'pattern of racketeering activity means' at least two predicate acts that 'are related and that amount to or pose a threat of continued criminal activity.'" *Bonavitacola,* 87 F. App'x at 231. The requirements for continuity depend on whether the pattern is close-ended or open-ended, *i.e.*, whether the behavior has ceased or is ongoing. *Id.* at 232. A plaintiff whose claim is based on a close-ended pattern must allege "a series of related predicates lasting a 'substantial period of time.'" *Id.* (citations omitted). For an open-ended pattern, the plaintiff must allege a "'threat of continuity' that 'exists when the predicate acts are a part of defendant's regular way of doing business.'" *Id.* at 232-33 (citations omitted). "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-

---

[7]      Notably, Plaintiffs offer little if any response to Defendants' argument in this regard.

term criminal conduct." *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241-42 (1989); *see also Battiste v. Arbors Mgmt., Inc.*, 522 F. App'x 171, 172-73 (3d Cir. 2013) (explaining that while the Third Circuit has "declined to provide a 'litmus test' for what length of time would be substantial enough to give rise to a pattern, [the Court has held] that a twelve-month period was too short."); *Hughes v. Consol. Pa. Coal Co.*, 945 F.2d 594, 609-11 (3d Cir. 1991) (collecting cases in which courts have held that several-month periods were not substantial and holding that the twelve-month period at issue was not substantial).

As pled, Plaintiffs' allegations of false advertising cannot support a RICO claim because the three alleged instances of false advertising (even if deemed to be racketeering activity) do not form the requisite continuous pattern of racketeering activity. The advertisements occurred within a three-day period in October 2014. (Amend. Comp. at ¶209-10). As such, the alleged activity did not occur over a "substantial period of time." *Bonavitacola*, 87 F. App'x at 232; *Battiste*, 522 F. App'x at 172-73. Plaintiffs also have not pled facts to establish an open-ended pattern since no facts were alleged that could establish that these misrepresentations were part of Defendants' "regular way of doing business." *Id.* at 231. As such, the amended complaint is devoid of facts sufficient to support the requisite continuity. Therefore, Plaintiffs' §1962(c) RICO claims against all Defendants are dismissed.

### Plaintiffs' RICO conspiracy claims against all Defendants

Plaintiffs assert RICO conspiracy claims against all Defendants under 18 U.S.C. §1962(d) for their alleged conspiracy to violate §§1962(a), (b) and (c). Section 1962(d) makes it "unlawful for any person to conspire to violate" §§1962(a)-(c). 18 U.S.C. §1962(d). "Any claim under section 1962(d) based on a conspiracy to violate [any of] the other subsections of section

21

1962 necessarily must fail if the substantive claims are themselves deficient." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993).

Common to all of the substantive RICO provisions is the requirement that there be a "pattern of racketeering activity" in which defendants engaged. *Tabas v. Tabas*, 47 F.3d 1280, 1289 (3d Cir. 1995) ("A common thread running throughout §1962 is that an injured party must demonstrate that the defendant was engaged in a 'pattern of racketeering activity.'"); *Atiyeh v. Casino Management Services*, 1996 WL 146129, at *2 (E.D. Pa. Mar. 28, 1996); *see also* 18 U.S.C. §1962(a), (b) and (c) (each subsection requiring "a pattern of racketeering activity."). As stated, Plaintiffs have failed to allege facts to support the existence of a pattern of racketeering activity since they have alleged only three instances of the requisite predicate acts, *i.e.*, wire fraud, which occurred over a three-day period. These three instances are insufficient under Third Circuit precedent to constitute a pattern of racketeering activity. *See, e.g., Battiste*, 522 F. App'x at 172-73. Accordingly, Plaintiffs' RICO conspiracy claims fail because Plaintiffs have not alleged facts sufficient to support any substantive violation of RICO. Plaintiffs' RICO conspiracy claims against all Defendants, therefore, are dismissed.

### Conspiracy to violate §§1962(a) and (b)

Defendants also argue that Plaintiffs' conspiracy claims premised on violations of both §1962(a) and §1962(b) fail because Plaintiffs have not alleged facts sufficient to establish either (1) a separate and distinct injury from that allegedly suffered as a result of Defendants' purported §1962(c) violation or (2) the existence of the requisite victim "enterprise," as opposed to the unlawful enterprise underlying their §1962(c) claims. This Court agrees.

Section 1962(a) provides:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering

> activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. §1962(a).   This section was promulgated to halt the investment of racketeering proceeds into legitimate businesses, including the practice of money laundering.   *See Brittingham v. Mobil Corp.*, 943 F.2d 297, 303 (3d Cir. 1991); *Macauley*, 7 F. Supp. 3d at 484. "[T]o sufficiently plead a violation of §1962(a), a plaintiff must allege three elements: (1) the defendant has received money from a pattern of racketeering activity; (2) the defendant then utilized that money to acquire or establish an enterprise; and (3) that enterprise affects interstate or foreign commerce." *Macauley,* 7 F. Supp.3d at 484-85.

Section 1962(b) provides:

> It shall be unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. §1962(b).

To plead a viable claim under this section, a plaintiff must allege facts to show that: (1) defendant has an interest in an enterprise; (2) defendant gained or maintained that interest through a pattern of racketeering; and (3) the enterprise affects interstate commerce.   *Lightning Lube,* 4 F.3d at 1190.   A plaintiff also "must show injury from the defendant's acquisition or control of an interest in a RICO enterprise, in addition to injury from the predicate acts."   *Id.*

As argued by Defendants, the Third Circuit has repeatedly held that to assert a viable claim under either of these two subsections, a plaintiff must plead facts showing an injury *distinct* from an injury caused by the alleged predicate acts themselves, *i.e.*, distinct from that

alleged in support of a claim under §1962(c). *See Lightning Lube*, 4 F.3d at 1188. "In order to avoid overlap with 18 U.S.C. §1962(c), which creates liability for any injury caused by a pattern of racketeering activity, the Third Circuit has held that a claim under §1962(a) 'must allege an injury resulting from the investment of racketeering income distinct from an injury caused by the predicate [racketeering] acts themselves.'" *Guy's Mechanical Systems, Inc. v. FIA Card Services, N.A.*, 339 F. App'x 193, 194 (3d Cir. 2009) (citing *Lightning Lube*, 4 F.3d at 1188). Similarly, "a well-pled complaint under section 1962(b), just as with section 1962(a), requires the assertion of an injury independent from that caused by the pattern of racketeering." *Lightning Lube, Inc.*, 4 F.3d at 1191. It is insufficient for a plaintiff to merely "alleg[e] that the success of defendant' racketeering activities permitted the defendants to continue to operate their enterprise and allow[] the fraudulent scheme to grow." *Coleman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 1992 WL 368460, at *3 (E.D. Pa. Dec. 2, 1992).

Here, in support of both their §1962(a) and §1962(b) claims, Plaintiffs have avered the same injury as that alleged in support of their §1962(c) claim. (*Compare* Amend. Comp. ¶¶342, 348, 354). Specifically, in support of their §1962(c) claim, Plaintiffs allege:

> As direct and proximate cause of the aforementioned violations of 18 U.S.C. §1962(c), each of the Plaintiffs has suffered substantial injury to its business or property within the meaning of 18 U.S.C. §1964(c), by reason of the violation of 18 U.S.C. §1962(c) committed by Defendants, including, but not limited to lost or reduced fare revenues and substantial and irreparable loss of goodwill and business opportunity with consumers and customers.

(Amend. Comp. ¶342). Almost identically, in support of both their §1962(a) and §1962(b) claims, Plaintiffs allege:

> As a result, each of the Plaintiffs has suffered substantial injury to its business or property within the meaning of 18 U.S.C. §1964(c), including, but not limited to lost or reduced fare revenues and

24

> substantial and irreparable loss of goodwill and business
> opportunity with consumers and customers.

(Amend. Comp. ¶¶348, 354).

As such, Plaintiffs have not alleged any injury or facts to establish an injury separate and distinct from that alleged as a result of the predicate fraudulent acts themselves. At best, Plaintiffs have pled that Defendants' investments in the enterprise have merely permitted the fraudulent activity to continue. Such allegation is insufficient for either a §1962(a) or §1962(b) claim. *See Guy's Mech. Sys., Inc.,* 339 F. App'x at 195 ("As we have made clear, the mere use of racketeering proceeds to support a business that continues to engage in the racketeering activities that produced those profits does not qualify as an investment injury for purposes of a §1962(a) claim."); *see also Coleman,* 1992 WL 368460, at \*3. Accordingly, Plaintiffs have failed to allege facts sufficient to support their §1962(a) and §1962(b) claims. These claims, therefore, are dismissed for this additional reason.

Defendants also argue that Plaintiffs' conspiracy claims premised on Defendants' purported conspiracy to violate §§1962(a) and (b) fail because Plaintiffs have not pled facts to support an "enterprise" separate from the unlawful taxicab enterprise underlying their §1962(c) claims. Again, this Court agrees.

Unlike in §1962(c), the "enterprise" referenced in §1962(a) and §1962(b) is the victim of the unlawful activity, rather than the perpetrator of the underlying unlawful enterprise. The United States Supreme Court described this distinction in the "enterprises" as follows:

> The "enterprise" referred to in subsections (a) and (b) is thus
> something acquired through the use of illegal activities or by
> money obtained from illegal activities. The enterprise in these
> subsections is the victim of unlawful activity.

*Nat'l Org. for Women, Inc. v. Schneidler*, 510 U.S. 249, 259 (1992). The term "enterprise" as used in §1962(c), however, "connotes generally the vehicle through which the unlawful pattern of racketeering activity is committed, rather than the victim of unlawful activity." *Id.*; *see also Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.*, 46 F.3d 258, 266 (3d Cir.1995) (explaining that, in contrast to §1962(c), "subsections (a) and (b) of 1962 addressed congressional concern with the infiltration of legitimate organization[s] by racketeers."); *Atiyeh*, 1996 WL 146129, at *4 ("For purposes of stating a specific RICO claim, however, the definition of the term 'enterprise' varies in accordance with the substantive provision involved. Thus, an enterprise under §§1962(a) and (b) is 'something acquired through the use of illegal activities or by money obtained from illegal activities; it is the victim of unlawful activity.").

Here, Plaintiffs have not alleged any facts regarding a separate "enterprise" that is the victim of any alleged illegal activity, as opposed to the perpetrator. Plaintiffs allege only the existence of the illegal taxicab enterprise underlying their §1962(c) claim; *to wit*:

> The Illegal Taxicab Enterprise of Defendants described above, constitute an "enterprise" within the meaning of 18 U.S.C. §1961(4) and §1962(a), which "enterprise" was engaged in activities affecting interstate commerce at all times relevant to this complaint.

(Amend. Comp. ¶346). Similarly, in their §1962(b) claim, Plaintiffs aver the following with respect to the enterprise:

> The Illegal Taxicab Enterprise of Defendants, described above, constitutes an "enterprise" within the meaning of 18 U.S.C. §1961(4) and §1962(b), which "enterprise" was engaged in activities affecting interstate commerce at all times relevant to this complaint.

(Amend. Comp. ¶352). As such, in both the §1962(a) and §1962(b) claims, Plaintiffs allege only the existence of the same "Illegal Taxicab Enterprise" underlying their §1962(c) claims. Such

allegations are insufficient to support claims under either §1962(a) or §1962(b). Accordingly, Plaintiffs' claims under those subsections are dismissed.

## CONCLUSION

Consistent with the reasons set forth herein, the Uber Defendants' motion to dismiss is granted, *in part*, and denied, *in part*. Specifically, except for Plaintiffs' Lanham Act claims against Uber and Feldman premised on the alleged misrepresentations regarding insurance, Plaintiffs' remaining claims against the Uber Defendants are dismissed. In addition, Google's motion to dismiss is granted in its entirety. Two Orders consistent with this Memorandum Opinion follow.

NITZA I. QUIÑONES ALEJANDRO, USDC J.